Elizabeth ANTHONY, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary Health and Human Services, Defendant–Appellee.

No. 90–1667.

United States Court of Appeals, Fifth Circuit.

Feb. 25, 1992.

Hansel Anthony Jones, Jackson, Miss., for plaintiff-appellant.

Daniel E. Lynn, Asst. U.S. Atty., George Phillips, U.S. Atty., Jackson, Miss., Michael S. Feinstein, Asst. Regional Counsel, Holly A. Grimes, Asst. Regional Counsel, Mary A. Sloan, Principal Regional Counsel, Mack A. Davis, Deputy Chief Counsel, Bruce R. Granger, Chief Counsel, Scott C. Briles, Dept. of Health and Human Services, Office of Gen. Counsel, Atlanta, Ga., for defendant-appellee.

Before POLITZ, Chief Judge, JOHNSON, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Elizabeth Anthony (Anthony) seeks review, pursuant to 42 U.S.C. § 405(g), of the denial of disability benefits by the Secretary of Health and Human Services (the Secretary). On appeal, Anthony argues that the Secretary's finding that she was not disabled within her eligibility period is not supported by substantial evidence. We affirm.

## Facts and Proceedings Below

At the time she filed her application for disability benefits, Anthony was a forty-four-year-old woman with a tenth grade education. The administrative record reveals that her prior work experience consisted of employment as a waitress, charge nurse, cashier, and school picture inspector. Her insured status expired on June 30, 1985.

In her application for benefits, Anthony claimed disability due to a progressive muscle disease that has rendered her incapacitated since December 1979. She complained that she gets nervous during the day, and is exhausted by noon. She also stated that her vision is poor, she suffers from allergies, and is frequently depressed. Despite these ailments, however, she reported that she is still able to drive an automobile, goes to church every week, and is able to care for herself. Other than a hysterectomy several years ago, she has had no major surgery; moreover, she has never been hospitalized for mental illness.

Anthony was first examined by Dr. Shri Mishra for her muscle disease on October 26, 1981. At this visit, she reported a progressive muscular weakness in both her upper and lower extremities. She related that she had difficulties in getting up from chairs, climbing stairs, and lifting objects above her shoulders. She also reported leg cramping. Upon examination, Dr. Mishra discovered that Anthony had slightly enlarged calves, but otherwise was physically unremarkable. A neurological examination produced no abnormal results. A sensory examination was also normal. However, Anthony's strength was somewhat reduced, and she had difficulty walking in tandem and in stepping on a stool without bilateral hand support. Dr. Mishra concluded at that point that Anthony "has an

interesting myopathy," [1] but further stated that he did not know "the etiology at this point."

Dr. Mishra again examined Anthony on June 28, 1982. Anthony complained of muscle pain and fatigue. She stated that the pain became more severe after exercise and during cold weather, but improved following periods of rest. She also reported previous falling episodes and difficulty in swallowing. She denied, however, having common signs of muscular dystrophy,[2] such as muscle twitching and myoglobinuria.[3] Upon examination, Anthony's coordination was normal, as were her head, eyes, ears, nose and throat. Her overall muscle tone was normal, but her facial muscles were mildly weak. The strength in the muscles of both the upper and lower extremities was decreased. A sensory examination was normal, and Anthony's reflexes were also normal. Dr. Mishra's impression at that time was possible metabolic myopathy. An examination in June 13, 1983 revealed substantially similar results.

On September 26, 1983, Anthony again consulted Dr. Mishra. At this visit, Anthony reported bladder difficulties, some myoglobinuria, muscle pain, and difficulty walking. A physical examination was essentially normal, with some proximal weakness. Diagnosis was proximal myopathy, etiology undetermined.

Dr. Mishra admitted Anthony to the University of Mississippi Medical Center (UMMC) on December 5, 1983. The attending physician noted that Anthony had mild ptosis—drooping of the eyelids—but no muscle twitching. Anthony appeared alert and oriented. She had approximately 70–80% strength universally, and somewhat better strength distally than proximally. She walked well, but could not walk on her heels. Myoglobin was negative in her urine. The physician, acknowledging that

a preliminary electromyelogram (EMG) did not document any myopathy, diagnosed Anthony as suffering from generic weakness.

Dr. Mishra examined Anthony again in January, 1984. A physical examination revealed essentially unchanged results. Dr. Mishra informed Anthony that a final EMG provided some abnormal readings, and suggested that Anthony suffered an inherited limb girdle muscular dystrophy. Additionally, the results of a muscle biopsy taken during her stay in the UMMC (but not yet completed as of the time of her release report) was abnormal myopathic, suggestive of limb girdle muscular dystrophy. Anthony was advised to visit a Muscular Dystrophy Association (MDA) clinic to be fitted for braces.

On April 23, 1984, Anthony filed an application for disability insurance benefits, alleging disability due to muscle disease and constant physical pain. Pending review of her application, Anthony visited Dr. James McIlwain, Jr., a family practice physician in Clinton, Mississippi on June 9, 1984. Dr. McIlwain noted that Anthony had no difficulty walking and climbing on the examination table without assistance. The physical examination revealed nothing extraordinary: Anthony was determined to have a full range of motion in all joints and experienced no focal muscular wasting in the extremities. Aware of Dr. Mishra's previous diagnosis of muscular dystrophy, Dr. McIlwain nevertheless concluded that he could not find any "functional incapacity of a major nature." On June 27, 1984, Anthony was notified that the Secretary had denied her claim for benefits. Anthony filed a motion for reconsideration on July 11, 1984.

Anthony was examined by a psychiatrist, Dr. Gray Hilsman, on August 8, 1984. Dr. Hilsman noted that Anthony exhibited

---

1. "Myopathy" is defined as "any abnormal condition or disease of the muscular tissues." *Stedman's Medical Dictionary* 921 (5th Lawyers' ed. 1982).

2. An inborn abnormality of muscle associated with dysfunction and ultimately with deterioration. *Stedman's Medical Dictionary* at 436.

3. The excretion of muscle proteins in the urine; associated with the deterioration of muscle tissue. *Stedman's Medical Dictionary* at 920.

signs of anxiety and depression. Although her speech was slow and monotonous, it was relevant and clear. Orientation and memory were intact. Anthony denied hallucinations or phobias, but did admit to occasional nightmares. Her general fund of information was discovered to be fair, her judgment was normal, and her insight was fair. Diagnosis was dysthymic mood disorder[4] secondary to failing physical health.

On August 28, 1984, the Secretary denied Anthony's application on reconsideration, stating that the initial denial was correct. Anthony then sought review from an Administrative Law Judge (ALJ) of the denial of her claim. At the hearing before the ALJ on October 25, 1984, Anthony admitted that she was able to dress and bathe herself and that she regularly washed the dirty dishes in the house. She also related that she drove the car to the store once or twice a week and regularly attended church. The ALJ observed that Anthony's subjective complaints of constant and debilitating pain were not credible, based on her appearance at the hearing, her complaints to examining physicians, and her lack of need for medication. The ALJ recognized that Anthony had a provisional diagnosis of limb girdle muscular dystrophy and dysthymic mood disorder, but concluded that "the claimant does not have a severe impairment." The Appeals Council adopted the ALJ's decision, making it the final decision of the Secretary.

On November 12, 1985, the district court determined that the ALJ had evaluated the "severe impairment" requirement for disability under an incorrect legal standard, and remanded the cause for reconsideration in light of *Stone v. Heckler,* 752 F.2d 1099 (5th Cir.1985). On remand, the ALJ again concluded that Anthony did not have a severe impairment. Evaluating the claim under the standard articulated in *Stone,* the ALJ recited that "[t]he claimant's impairments, taken singly or in combination, are only slight abnormalities having such minimal effect on the claimant that they would not be expected to interfere with her

ability to work, irrespective of her age, education and work experience." The Appeals Council adopted the ALJ's decision on November 17, 1987, making it the final decision of the Secretary.

Having exhausted all administrative remedies, Anthony timely filed a complaint in the United States District Court for the Southern District of Mississippi, seeking review of the administrative decision pursuant to 42 U.S.C. § 405(g). The district court assigned the case to a magistrate for recommendations.

The magistrate issued his recommended findings on June 20, 1990, determining that substantial evidence supported the ALJ's second opinion that Anthony was not physically or mentally disabled, and did not suffer from debilitating pain, within the eligibility period. The district court adopted the magistrate's findings and affirmed the Secretary's denial of Anthony's claim.

### Discussion

■ This Court limits its review of a denial of disability insurance benefits to two issues: (1) whether the Secretary applied the proper legal standards, and (2) whether the Secretary's decision is supported by substantial evidence on the record as a whole. *Wingo v. Bowen,* 852 F.2d 827, 829 (5th Cir.1988). The facts of this case raise both issues.

### I. Determination of "Severe Impairment"

The Social Security Act (the Act), as amended, permits the payment of insurance benefits to persons who have contributed to the program and who suffer a physical or mental disability. 42 U.S.C. § 423(a)(1)(D). The Act defines "disability" as the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

**4.** "Dysthymia" is any disorder of the mood.

*Stedman's Medical Dictionary* at 436.

A physical or mental impairment is in turn defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The suffering of some impairment does not establish disability; a claimant is disabled only if she is "incapable of engaging in *any* substantial gainful activity." *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir.1986). The claimant has the burden to prove that she is disabled within the meaning of the Social Security Act. *Fraga v. Bowen,* 810 F.2d 1296, 1301 (5th Cir. 1987).

Pursuant to the express authorization of Congress, the Secretary has promulgated a five-step sequential evaluation process to determine whether a claimant is disabled: (1) If the claimant is presently working, a finding of "not disabled" must be made; (2) if the claimant does not have a "severe impairment" or combination of impairments, she will not be found disabled; (3) if the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded; (4) if the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and (5) if the claimant's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience and residual functional capacity, she will be found disabled. 20 C.F.R. §§ 404.-1520, 416.920; *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir.1991). A finding that the claimant is disabled or is not disabled at any point in the five-step review terminates the analysis. *Johnson v. Bowen,* 851 F.2d 748, 751 (5th Cir.1988).

■ The second step of the Secretary's sequential analysis, which is here challenged, requires that the factfinder decide whether the claimant's impairment is "severe," irrespective of age, education and work experience. The Secretary has issued regulations that define the scope of the term "severe impairment":

"If you do not have any impairment or combination of impairments which *significantly limits your physical or mental ability to do basic work activities,* we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. §§ 404.1520(c) & 416.-920(c) (emphasis added).

If the claimant does not have a severe impairment *under this definition,* the Secretary, as well as the ALJ or Appeals Council, typically will deny the claim without consideration of the remaining steps in the sequential analysis.

In *Stone v. Heckler,* 752 F.2d 1099 (5th Cir.1985), this Court evaluated the Secretary's severity regulation, and determined that it was inconsistent with the statutory language and the legislative history of the Act. *Id.* at 1104. Noting that the severity regulation defined "severe impairment" to include far fewer conditions than apparently the statutory language intended, we warned that we could not condone the Secretary's use of the severity regulation to systematically deny benefits to claimants who otherwise satisfy the statutory criteria. *Id.* Although we recognized in *Stone* that the factfinder is entitled to follow a sequential process that disposes of appropriate cases at an early stage, we also recognized that it is impermissible to conduct the evaluation in such a manner as to deny benefits to individuals who are in fact unable to perform "substantial gainful activity." *Id.* at 1103. In that regard, we emphasized the proper standard for determining whether a claimant's impairment is severe:

" '[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' " *Id.* at 1101 (quoting *Estran v. Heckler,* 745 F.2d 340, 341 (5th Cir.1984)).

In disapproving the Secretary's use of the severity regulation,[5] we held that we would

---

**5.** Despite our disapproval, we have yet to go so

far as to hold that the severity regulation is

"in the future assume that the ALJ and the Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect...." *Id.* at 1106.

In the case now before us, the ALJ's second opinion followed the dictates of *Stone.* However, the Supreme Court in the interim addressed for the first time whether the Secretary's severity regulation was valid. In *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 2290–95, 96 L.Ed.2d 119 (1987), a majority of the Court concluded that the severity regulation was facially valid, but reserved the question of whether the regulation would be valid as applied in certain circumstances. *Id.* 107 S.Ct. at 2298 n. 12. The Court reasoned that Congress had approved the Secretary's sequential evaluation process to ease the dismissal of claims in those meritless cases in which "there is no reason for the Secretary to consider the claimant's age, education and work experience." *Id.* 107 S.Ct. at 2295. The Court refused, however, to either approve or disapprove the specific language in the Secretary's severity regulation.

■ In light of the *Yuckert* opinion, we called for additional briefing from the par-

ties on the issue of whether the Supreme Court had altered the standard we announced in *Stone.* Our analysis of *Yuckert* convinces us that it has not. *Yuckert* simply upheld the facial validity of the severity regulation as an appropriate method of streamlining the review process. *Yuckert* did *not* conclude that the severity regulation properly interpreted the statutory requirements, and *Yuckert* did *not* purport to state the proper definition of the term "severe impairment." Thus, *Stone* is not inconsistent with the Supreme Court's pronouncement in *Yuckert; Stone* merely reasons that the regulation cannot be applied to summarily dismiss, without consideration of the remaining steps in the sequential analysis, claims of those whose impairment is more than a slight abnormality.

Most courts agree that *Yuckert* does not displace prior limitations on the Secretary's reliance on the severity regulation.[6] *See, e.g., Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir.1988); *Gonzalez–Garcia v. Secretary of Health and Human Services,* 835 F.2d 1, 2 (1st Cir.1987); *Brown v. Bowen,* 827 F.2d 311, 312 (8th Cir.1987).[7]

Today, we join the First, Sixth and Eighth Circuits and conclude that our stan-

facially invalid. Although the Secretary's severity regulation, if taken literally, is clearly inconsistent with our conclusion in *Stone* that a claimant need only prove that her impairment is something more than a slight abnormality, we did not in *Stone* or thereafter expressly reject the validity of the severity regulation. In fact, this Circuit, like other circuits, has conceded that the Secretary may require the claimant to make a *de minimis* showing that her impairment is severe enough to interfere with her ability to work. *See Hampton v. Bowen,* 785 F.2d 1308, 1311 (5th Cir.1986) (acknowledging that *"Stone* does not require a wholesale remand of all severity cases"); *see also McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118, 1122 (1st Cir.1986) (recognizing the validity of a *de minimis* screening device).

**6.** The parties in this case also agree that *Yuckert* did not alter the standard by which an impairment is considered severe in this Circuit.

**7.** In *Brown,* the Eighth Circuit concluded that a majority of the Supreme Court adopted a standard that provides that " '[o]nly those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied

benefits without undertaking' the subsequent steps of the sequential evaluation process." *Brown,* 827 F.2d at 312 (quoting *Yuckert,* 107 S.Ct. at 2298 (O'Connor, J., concurring)). In so doing, the court noted that five justices—the justices of the concurrence and the dissent—agreed that the language of the severity regulation cannot be used to disqualify those who meet the statutory requirements for disability. Justice O'Connor authored the concurrence in *Yuckert,* joined by Justice Stevens, which expressed concern that the severity regulation, as articulated, might erroneously permit the premature dismissal of claims, but emphasized that this fact did not undermine the facial validity of the regulation. Three other justices—Justice Blackmun, Justice Brennan and Justice Marshall—dissented.

It is unclear whether Justice O'Connor intended to formulate a formal, precedent making definition of the term "severe impairment." Even if Justice O'Connor did so intend, we do not believe that she intended to formulate a definition that differed in its application from our definition in *Stone;* Justice O'Connor cited a progenitor of *Stone—Estran v. Heckler,* 745 F.2d 340, 341 (5th Cir.1984)—as authority for her definition of severe impairment.

dards announced in *Stone* remain unchanged in the wake of *Yuckert*. Accordingly, we hold that the Secretary applied the proper legal standard in evaluating Anthony's disability claim. We turn now to the issue of whether the Secretary's factual findings are supported by substantial evidence.

## II. Evaluation of Anthony's Claims

■ Our function on review of the Secretary's denial of disability benefits is to determine whether substantial evidence exists in the record as a whole to support the Secretary's factual findings. *Fraga, supra,* 810 F.2d at 1302. If the Secretary's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. *Richardson,* 91 S.Ct. at 1427. This Court may not reweigh the evidence or try the issues *de novo. Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir.1985). Rather, conflicts in the evidence are for the Secretary to resolve. *Patton v. Schweiker,* 697 F.2d 590, 592 (5th Cir.1983).

Anthony alleges disability as of December 15, 1979. Based on Anthony's earnings history, her insured status expired on June 30, 1985. 42 U.S.C. §§ 416(i)(3), 423(c)(1). Thus, to prove that she is entitled to disability benefits, Anthony must not only prove that she is disabled, but that she became disabled prior to the expiration of her insured status. 42 U.S.C. § 423(a), (c); *Owens v. Heckler,* 770 F.2d 1276, 1280 (5th Cir.1985).

The Secretary engaged in the sequential evaluation process, but determined at the second step that Anthony's physical impairment was not "severe," reciting our standard in *Stone, supra.*

■ Although the question is indeed a close one, we conclude that the record furnishes minimally adequate support for the Secretary's finding that Anthony did not establish a severe impairment.

The record does not reveal that Anthony ever received a definite diagnosis of a muscular disease; moreover, even if Dr. Mishra's diagnoses could be construed as indicating that Anthony suffers from some type of muscular dystrophy, Dr. McIlwain noted that Anthony could walk without assistance, could get up and down on the examining table, and needed no assistance during the examination. He essentially found nothing wrong with her. Dr. McIlwain's report constitutes substantial evidence that Anthony did not suffer from a severe physical impairment. Although muscle weakness was observed in several of Anthony's other examinations, her physical, neurological motor examinations have been essentially normal. Anthony herself related at the administrative hearing that she is able to care for her personal needs, cooks meals, drives her car once or twice a week, and regularly attends church service and related activities.

With regard to Anthony's mental health, the record indicates that at most she suffers from depression and mood swings due to her perceived physical deterioration. The record does not, however, disclose that treatment has been recommended for her condition. A psychiatric review technique form completed by the ALJ on April 22, 1986 concluded that Anthony's impairment from her mood disorder is not severe. We believe that this finding is supported by substantial evidence; the record does not show any limitation experienced by Anthony due to her mood condition.

■ Finally, Anthony also complained of pain to the Secretary. The ALJ found Anthony's subjective complaints of pain unsubstantiated by objective medical findings, and therefore, not credible. Anthony argues that pain can be considered disabling, despite the absence of supporting medical evidence for the pain itself, if linked to a medically determinable impairment. *Hollis v. Bowen,* 837 F.2d 1378, 1384 (5th Cir. 1988). However, not all pain is disabling; moreover, subjective evidence need not be credited over conflicting medical evidence.

*Jones v. Heckler,* 702 F.2d 616, 621 n. 4 (5th Cir.1983). At a minimum, objective medical evidence must demonstrate the existence of a condition that could reasonably be expected to produce the level of pain or other symptoms alleged. *Owens, supra,* 770 F.2d at 1281.

The only medication for pain Anthony has taken is Anacin #3, and at the administrative hearing she testified that her only medication was for her allergies. Her physical examinations reveal that Anthony could engage in nearly a full range of motion without significant tenderness or pain. According to the record, Anthony is able to engage in a wide variety of activities, including visiting family and friends, attending church, dressing and bathing herself, preparing her own lunch, and driving an automobile once or twice a week. The Secretary's finding of no severe impairment due to pain is supported by substantial evidence.

### Conclusion

We conclude that the Secretary's determination that Anthony had not shown that she suffered from more than "slight abnormalities having such minimal effect on the claimant that they would not be expected to interfere with her ability to work, irrespective of her age, education or work experience" is at least minimally supported by substantial evidence and resulted from application of the correct legal standard.

For the reasons stated, the decision of the district court affirming the Secretary's denial of benefits is

AFFIRMED.