### Leonard R. OGBURN

v.

### COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION.[1]

No. 9:96–CV–10.

United States District Court, E.D. Texas, Lufkin Division.

Nov. 10, 1997.

---

1. Under the Social Security Independence and Program Improvement Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with section 106(d) of Public Law 103–296 and FED R. CIV. P. 25(d)(1), Shirley S. Chater, Commissioner of Social Security, was substituted for Donna E. Shalala, Secretary of Health and Human Services as defendant in this action.

John J. Callahan was appointed acting Commissioner effective March 1, 1997, succeeding Shirley S. Chater. Pursuant to the last sentence of 405(g) of the Social Security Act, no further action need be taken. 42 U.S.C § 405(g) ("... any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

884

Forest Gene Braselton, Nacogdoches, TX, for Plaintiff.

Stephon M. Mason, Asst. U.S. Atty., U.S. Attorney's Office, Tyler, TX, for Defendant.

### MEMORANDUM ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Heartfield, District Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Secretary of Health and Human Services denying plaintiff's application for disability insurance benefits.

The court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court. The court has received and considered the Report of the United States Magistrate Judge filed pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is **ADOPTED**. A final judgment will be entered in this case in accordance with the magistrate judge's recommendations.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

### I. Introduction

Plaintiff Leonard R. Ogburn brings this action seeking judicial review of the final decision by the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner granted Ogburn's application for disability benefits for a period of disability from November 1991 to February 1994, but denied plaintiff's application as it related to benefits beyond February 1994. Ogburn seeks judicial review of the portion of the Commissioner's decision denying plaintiff benefits.

This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings and conclusions of law. *See* 28 U.S.C. § 636(b)(1)(B) and Local Rules for the Assignment of Duties to United States Magistrate Judges. Jurisdiction is invoked pursuant to 42 U.S.C. § 405(g).

### II. Factual Background and Administrative Proceedings Below

Plaintiff filed his application for disability benefits on February 16, 1993, alleging disability due to back injuries. (Tr. at 26). The Commissioner denied plaintiff's application initially and on reconsideration. Plaintiff then requested and received a hearing before the Administrative Law Judge ("ALJ"). (Tr. at 31, 45, 48). On September 26, 1994, plaintiff appeared pro se and testified at the hearing. (Tr. at 118–141). The ALJ found that Ogburn qualified for benefits from November 26, 1991 to February 15, 1994. Because he further found that Ogburn's disability ceased as of February 15, 1994, the ALJ

denied Ogburn's application as it related to future benefits. (Tr. at 18–19).

Plaintiff then requested Appeals Council review of the adverse portion of the Commissioner's decision. The Appeals Council denied Ogburn's request. (Tr. at 4–5). Having exhausted all administrative remedies, plaintiff filed this appeal in the district court.

### III. Judicial Review

The court's role is to determine whether the Commissioner applied the proper legal standards and whether the decision is supported by substantial evidence. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992). Substantial evidence is more than a scintilla, but less than a preponderance, *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992), it requires evidence relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion, *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Marcello v. Bowen,* 803 F.2d 851, 853 (5th Cir.1986) (citing *Jones v. Heckler,* 702 F.2d 616, 620 (5th Cir.1983)), and must be "enough to justify, if the trial were submitted to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Bd. v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 299–300, 59 S.CT. 501, 504–05, 83 L.Ed. 660 (1939), *cited in* Harvey L. McCormick, Social Security Claims And Procedures § 672, at 193 & n.1 (4th ed.1991).

This court should scrutinize the whole record to determine whether substantial evidence exists. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994), *cert. denied* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995); *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir.1983). The court should not, however, proceed to reweigh the evidence or review the ALJ's decision *de novo. Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir.1989); *Neal v. Bowen,* 829 F.2d 528, 530 (5th Cir.1987). Rather, it is for the Commissioner to weigh the evidence and to resolve any conflicts. *Anthony v. Sullivan,* 954 F.2d at 295; *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir.1990). If supported by substantial

evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales,* 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 230, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *see also,* 42 U.S.C. § 405(g).

■ To determine whether substantial evidence supports the Commissioner's decision, the court must examine four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain; and (4) claimant's educational background, age, and work history. *Owens v. Heckler,* 770 F.2d 1276, 1279 (5th Cir.1985) (citing *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir.1972)). Plaintiff raised issues as to the first, second, and third elements.

## IV. Eligibility for Disability Insurance Benefits

■ To qualify for disability insurance benefits, the plaintiff must meet the requirements set forth in the Social Security Act ("Act"). *See,* 42 U.S.C. § 423(a). That is, the plaintiff must be under age 65, file an application for such benefits, and be under a disability as defined by the Act. *See* 42 U.S.C. §§ 416(i), 423(a). Those claiming disability insurance benefits under the Act have the burden of showing the existence of a disability. *Demandre v. Califano,* 591 F.2d 1088, 1090 (5th Cir.1979), *cert. denied,* 444 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323 (1979); *Rhynes v. Califano,* 586 F.2d 388 (5th Cir.1978); *Kirkland v. Weinberger,* 480 F.2d 46 (5th Cir.), *cert. denied,* 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973).

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is one which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques." 42 U.S.C. § 423(d)(3). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

■ Establishment of a disability is thus a dual process. First, the claimant must prove that he suffers from a medically determinable impairment. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Second, the claimant must prove that his impairment or combination of impairments renders him unable to engage either in the work he previously performed or other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 416(i)(1), 423(d)(2).

Consequently, proof of the existence of a disease or an impairment alone does not establish a disability. The claimant must prove that he is unable to engage in any substantial gainful employment. *Herridge v. Richardson,* 464 F.2d 198 (5th Cir.1972); *Ratliff v. Richardson,* 445 F.2d 440 (5th Cir. 1971). Thus, social security claimants bear a formidable burden of proof, "so stringent that it has been described as bordering on the unrealistic." *Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir.1981).

## V. Continuing Disability

■ The law requires, in every case, the Commissioner make an individual determination as to whether the claimant is disabled. *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). Once a person is found disabled and benefits are awarded, the Commissioner may terminate their benefits only where the applicant's condition improves. Thus, termination of benefits is proper only if substantial evidence shows:

[T]here has been any medical improvement [2] in the individual's impairment or combination of impairments (other than medical improvement which is not related

---

**2.** "Medical improvement" is any decrease in the medical severity of claimant's impairment or combination of impairments. 20 C.F.R. 404.1594(b)(1).

to the individual's ability to work), and the individual is now able to engage in substantial gainful activity.

42 U.S.C. § 423(f)(1).

## VI. Discussion

### A. Plaintiff's Points of Error

By local orders, this court's review is restricted to points of error specifically raised and discussed in briefs submitted after the administrative transcript is filed. *See* ("Notice To Parties In Social Security Appeals and Order" ¶¶ 4, 5 Docket Entry 8, May 22, 1995 and "Amended Order Directing Filing of Briefs" Docket Entry 20, June 19, 1996.) Plaintiff raises two points of error to the ALJ's decision.

First, Ogburn argues that substantial evidence does not support the decision. Ogburn argues that the ALJ gave insufficient weight to a report from his treating physician, Dr. Roland Mitchell[3]. Dr. Mitchell's report stated that Ogburn was "wholly disabled" and could not engage "in any business or occupation whatsoever." (Tr. at 6). Second, Ogburn challenges the finding that he can engage in substantial gainful employment. Ogburn's second argument is based on a portion of the same report from Dr. Mitchell, where the doctor concluded Ogburn would never "be able to do any kind of work." Plaintiff also claims that his subjective assertions of pain constitute a disability and weigh against a finding that he can engage in any substantial gainful work.

The Commissioner responds that objective medical evidence supports the ALJ's decision to grant less evidentiary weight to Dr. Mitchell's report. The Commissioner points to the medical reports from Dr. James C. Johnston, M.D. and the Occupational Health Center that indicate plaintiff can perform at least sedentary work activities. The Commissioner argues that the ALJ was correct in rejecting Ogburn's subjective assertions of pain because, (1) Ogburn admitted that his pain would not prevent him from working, (2) Dr.

Mitchell denied Ogburn's requests for pain killers, and (3) Ogburn did not regularly seek medical treatment for his alleged pain.

### B. Weight Given Physician Reports

Given the importance Ogburn places on Dr. Mitchell's report, it is fitting that this review start with an analysis of the ALJ's treatment of the medical evidence.

▮▮▮ Ordinarily the opinion of plaintiff's treating physician is entitled to great weight. *Greenspan v. Shalala*, 38 F.3d at 237. Because treating physicians are often unfamiliar with the Social Security Act, the treating physician's opinions are far from conclusive. See *Barajas v. Heckler*, 738 F.2d 641, 645 (5th Cir.1984) ("statement made by a treating physician that a claimant is disabled does not mean that the claimant is disabled for purposes of the Social Security Act"); 20 C.F.R. § 416.927(e).

▮▮▮ The ALJ may reject the opinion of a treating physician where good cause exists. *Leggett v. Chater*, 67 F.3d at 566. Good cause exists where the treating physician's statements are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, are unsupportable by evidence, *Id.*, (citing *Greenspan v. Shalala*, 38 F.3d at 237), or where the record contains contradictory opinions from other treating physicians, *Milam v. Bowen*, 782 F.2d 1284, 1287 (5th Cir.1986). The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985).

▮▮▮ Dr. Mitchell's October 5, 1995 report is the only time any one of plaintiff's physicians characterized his condition in such a manner. Dr. Mitchell's report is conclusory, providing no basis for his determination that plaintiff cannot work and will never be able to work again.[4]

---

**3.** Although the parties refer to Roland Mitchell as "Dr.", the record fails to disclose his area of specialization or discipline. Since the parties do

not contest Dr. Mitchell's qualifications as a physician, the court will treat him as such.

**4.** Although Dr. Mitchell claims to have treated plaintiff for four months as of the September

Dr. E.J. Mason, M.D., plaintiff's treating physician [5] from December 2, 1991 to October 19, 1992, noted that plaintiff's pain "comes and goes" and that the combination of therapy, a TENS unit, a heat pack, and hot showers reduced plaintiff's pain. (Tr. at 86–89). Dr. Johnston, who treated Ogburn from November 17, 1993 to July 11, 1994, noted that plaintiff "requests release or return to work and has no new complaints" of pain. (Tr. at 110). Furthermore, Dr. Gwynn Carver, physician at the Occupational Health Center, released Ogburn to work on July 29, 1994. (Tr. at 114). Dr. Carver released plaintiff to perform medium work occasionally, light work frequently, and sedentary work constantly.[6]

Ogburn's testimony also contradicts Dr. Mitchell's report. At the administrative hearing, plaintiff testified that in February 1994 he began to exercise and engage in other activities in preparation of returning to work. Plaintiff admitted that although these activities caused him pain, he ultimately believed the pain was endurable and that he could return to work by mid-February 1994.

Considering the conflicting evidence from plaintiff's earlier treating physicians, and plaintiff's own testimony regarding his physical ability, the court finds that the ALJ had good cause to place less weight on Dr. Mitchell's single, conclusory report.

## C. Ogburn's Residual Functional Capacity to Return to Substantial Gainful Employment

Ogburn next argues that substantial evidence does not support the ALJ's finding that plaintiff recovered the residual functional capacity to engage in substantial gainful employment. Plaintiff argues that his subjective assertions of pain and Dr. Mitchell's report stating that plaintiff can never return to work are substantial evidence of his inability to return to work.

### 1. Increase in Ogburn's Residual Functional Capacity

The Commissioner concluded plaintiff's condition improved to an extent that plaintiff attained the residual functional capacity to perform sedentary work. In reaching this conclusion, the Commissioner evaluated plaintiff's condition according to the medical improvement standard set forth in the Act. See 42 U.S.C. §§ 416(i)(2), 423(f).

■ Section 423(f) authorizes the termination of benefits whenever the Commissioner concludes a claimant's impairment "has ceased, does not exist, or is not disabling …" 42 U.S.C. §§ 416(i)(2)(D), 423(f). To determine if a claimant's impairment has ceased, the ALJ must apply a two step test. Id. First, there must be a decrease in the medical severity of the claimant's impairment. Second, the decreased severity must result in an increase the to claimant's residual functional capacity to perform basic work activities. Griego v. Sullivan, 940 F.2d 942, 944 (5th Cir.1991); 42 U.S.C. §§ 423(f)(1), (2). Upon finding medical improvement, the Commissioner may terminate a claimant's benefits.

The ALJ concluded that Ogburn experienced medical improvement. The ALJ based this determination on Ogburn's testimony that his condition had improved and on Dr. Carver's decision to allow plaintiff to return

---

1994 hearing date, the report upon which his findings appear is only a one page pre-printed form where he filled in the blanks. Conspicuously absent from the form is any recommended treatment or prescription for medication or therapy.

5. The Commissioner considers any physician who examines a claimant regularly and has an ongoing evaluative relationship with a claimant a treating physician. See 20 C.F.R. § 404.1502. Although plaintiff alleges that Dr. Mitchell is his treating physician, from 1991 to 1994, plaintiff had at least three other treating physicians, Drs. Mason, Johnston, and Jorgenson.

6. The regulations distinguish between medium, light, and sedentary based on the amount of weight that must be lifted to perform within each category. Medium work requires the ability to lift up to 50 pounds, with frequent lifting of 25 pound objects; light work requires an ability to lift 20 pounds, with frequent lifting of 10 pound objects; and sedentary work requires the ability to lift 10 pounds. 20 C.F.R. § 404.1567(a)-(c). The ability to perform at any level includes the ability to perform at all lower levels. Id. (e.g., medium work includes light, etc.).

to work. The ALJ also considered it important that plaintiff's condition did not require any additional medical management. (Tr. at 15).

■ This court's independent review of the record finds support for the ALJ's findings. Dr. Mason noted on several different occasions that a combination of therapy, medication, and hot showers relieved plaintiff's pain. (Tr. at 86–89). An electromyographic evaluation of plaintiff's spine revealed "no evidence of lumbosacral radiculopathy . . . [and] [q]uestionable chronic lumbosacral strain/sprain." (Tr. at 93). Dr. Mason recommended treatment of physical therapy, a TENS unit, and continued medication. Dr. Jorgenson, Ogburn's treating physician from November 1992 to April 1993, observed that plaintiff's MRI revealed a degenerative disc, with no gross rupture. By November 1994, however, Dr. Johnston concluded that plaintiff's condition was "medically fixed and stable" and that, although plaintiff would not likely improve, his condition would not likely change over the following twelve months. (Tr. at 112). By July 11, 1994, however, plaintiff's condition was such that he asked Dr. Johnston to release him to return to work. (Tr. at 110). Plaintiff was released on July 29, 1994. (Tr. at 114).

Ogburn's testimony sheds light on his medical improvement. Plaintiff testified that his condition improved in February 1994. (Tr. at 15). The record reveals that by June of 1992, Ogburn made "adamant requests" to receive a medical release so he could return to work. (Tr. at 110). Further, plaintiff requested that he be released "without any restrictions." *Id.*

Second, the ALJ then had to determine whether Ogburn's medical improvement related to his ability to work. The ALJ relied on Dr. Carver's assessment of Ogburn's condition upon release. Dr. Carver released Ogburn to return to work, but restricted plaintiff to occasional medium, frequent light, and constant sedentary work activities. (Tr. at 114). Additionally, Ogburn testified to his own medical improvement by February 1994 and the ability to perform light work activities. The ALJ nevertheless reduced Ogburn's residual functional capacity to sedentary work because Ogburn stated that he had trouble walking or standing for 6 hours and needed a sit down job. (Tr. at 16).

The substantial evidence supports the ALJ's finding that plaintiff experienced a reduction in the medical severity of his impairments. Because the reduction in medical severity is related to his ability to work, plaintiff's challenge is without merit.

## 2. Ogburn's Subjective Assertions of Pain

■ The "ALJ must consider the plaintiff's subjective symptoms as well as objective medical evidence, and those symptoms may support a finding of disability even without support from any objective medical data. . ." *Loya v. Heckler,* 707 F.2d 211, 214 (5th Cir.1983). Although pain can be a disabling condition, *Cook v. Heckler,* 750 F.2d 391, 395 (5th Cir.1985), not all pain, however, is disabling. *See Falco v. Shalala,* 27 F.3d 160, 163–164 (plaintiff's assertions of pain held not disabling); *Harper v. Sullivan,* 887 F.2d 92, 96 (5th Cir.1989) ("mere existence of pain does not automatically create grounds for disability"); *Carry v. Heckler,* 750 F.2d 479, 485 (5th Cir.1985).

■ The Fifth Circuit applies two different standards when evaluating a claimant's subjective assertions of pain. The first requires that "[a]t a minimum, objective medical evidence must demonstrate the existence of a condition that could reasonably be expected to produce the level of pain or other symptoms alleged." *Anthony v. Sullivan,* 954 F.2d at 295, (citing *Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir.1985)). Alternatively, the court has required that pain be "constant, unremitting, and wholly unresponsive to therapeutic treatment," before it is considered disabling. *Harrell v. Bowen,* 862 F.2d 471, 480 (5th Cir.1988). The ALJ considered both approaches in Ogburn's case.

The ALJ found that objective medical evidence failed to show an impairment that could reasonably be expected to produce disabling pain. (Tr. at 16). This conclusion is supported by the record.

On December 6, 1991, a month after his injury, an MRI on Ogburn's spine showed disc desiccation throughout the lumbar spine, most prominent at L3–4 and 4–5. (Tr. at 91–92). By February 11, 1992 an EMG study showed "no evidence of lumbosacral radiculopathy" with "questionable lumbosacral strain/sprain." (Tr. at 93). That same day plaintiff told physical therapist Renee Ames that his pain "comes and goes" and, except for an occasional Tylenol, that he was not taking any medications. (Tr. at 94). Although plaintiff told Ms. Ames his condition had not improved, by July 11, 1994 plaintiff asked Dr. Johnston to be released from doctor's care. On July 29, 1994 Dr. Gwynn released plaintiff from his active care. (Tr. at 114).

The ALJ also relied on plaintiff's testimony. Plaintiff testified at the hearing that his condition allowed him to work as of February 1994.

Q. [ALJ] ... when did you heal up enough so you could lift 20 pounds occasionally and ten pounds pretty frequently?

A. [Ogburn] ... I'm trying my best to go back to work. I started doing some exercising and things of that nature, some work hardening things myself, which it was in pain, but I contended to do it, to try to get back to work. And that's when I determined I could—it was possible to lift that type of work—I mean weight.

Q. All right. Well when was that?

A. Oh, when I got released which was August of—February of this year.

Q. February of '94?

A. Yes.

(Tr. at 127–28). Thus, plaintiff's own testimony indicates his belief that his pain was not so severe as to prevent him from performing light duty work.

Additionally, the ALJ found that Ogburn's pain was not "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Harrell v. Bowen*, 862 F.2d at 480. The finding is also supported by substantial evidence.

Dr. Mason noted that plaintiff's complaints of lower back pain "comes and goes." (Tr. at 86). Dr. Mason noted further that plaintiff stated on different occasions that the TENS unit, therapy, and medication relieved plaintiff's pain. Dr. Johnston noted that by July 11, 1994, plaintiff "adamantly requests a release to return to work." (Tr. at 110). Later that month, July 29, 1994, Dr. Gwynn Carver released plaintiff from active care. Dr. Carver considered plaintiff capable of performing medium duty work occasionally, light duty work occasionally, and sedentary work constantly. (Tr. at 114).

Plaintiff's own behavior contradicts his assertions of disabling pain. While plaintiff complained of constant back pain at the hearing, he again admitted that medication, hot showers, and a back brace alleviated his pain. (Tr. at 131–135). When the ALJ asked plaintiff why he did not have a back brace on at the administrative hearing, plaintiff responded that a hot shower that morning loosened his back to relieve his pain. (Tr. at 129).

The *objective medical evidence* indicates that plaintiff does not have a condition that can reasonably be expected to produce the pain alleged. The objective medical evidence, in connection with plaintiff's testimony, indicates that his pain is not constant, unremitting and wholly unresponsive to treatment. The ALJ's findings as to plaintiff's subjective assertions of pain were proper.

## VII. Recommendation

The decision of the ALJ is supported by the substantial evidence and should be affirmed. Further, defendant's motion for summary judgment should be granted and the case dismissed.

## VIII. Objections

Objections must be (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(b), 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and

recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).