Gauthier v. SSA                    CV-98-575-M    11/09/99

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Bruce A. Gauthier,
      Claimant

      v.                                    Civil No. 98-575-M

Kenneth S. Apfel, Commissioner,
Social Security Administration,
      Defendant.


**O R D E R**


     Claimant Bruce A. Gauthier moves pursuant to 42 U.S.C. § 405(g) to reverse the Commissioner's decision denying his application for Social Security Disability Insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423.  The Commissioner moves for an order affirming the Commissioner's decision.  For the reasons that follow, the decision of the Commissioner is affirmed.


Standard of Review

I.    Properly Supported Findings by the Administrative
      Law Judge ("ALJ") are Entitled to Deference.

     Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary [now, the "Commissioner"], with or without remanding the cause for a rehearing."  Factual findings of the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of

<u>Health and Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).[1]
Moreover, provided the ALJ's findings are supported by
substantial evidence, the court must sustain those findings even
when there may be substantial evidence supporting the claimant's
position. See <u>Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir.
1997) (The court "must consider both evidence that supports and
evidence that detracts from the [Commissioner's] decision, but
[the court] may not reverse merely because substantial evidence
exists for the opposite decision."). <u>See also</u> <u>Andrews v.
Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (The court "must
uphold the ALJ's decision where the evidence is susceptible to
more than one rational interpretation.").

In making factual findings, the Commissioner must weigh and
resolve conflicts in the evidence. See <u>Burgos Lopez v. Secretary
of Health & Human Services</u>, 747 F.2d 37, 40 (1st Cir. 1984)
(citing <u>Sitar v. Schweiker</u>, 671 F.2d 19, 22 (1st Cir. 1982)). It
is "the responsibility of the [Commissioner] to determine issues
of credibility and to draw inferences from the record evidence.
Indeed, the resolution of conflicts in the evidence is for the
[Commissioner] not the courts." <u>Irlanda Ortiz</u>, 955 F.2d at 769
(citation omitted). Accordingly, the court will give deference

---

[1]Substantial evidence is "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229
(1938). It is something less than the weight of the evidence,
and the possibility of drawing two inconsistent conclusions from
the evidence does not prevent an administrative agency's finding
from being supported by substantial evidence. <u>Consolo v. Federal
Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).

2

to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.   The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 7 (1st Cir. 1982)). Nevertheless, the claimant is not required to establish a doubt-free claim. The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

3

In assessing a disability claim, the Commissioner considers objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6. Provided the claimant has shown an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982). If the Commissioner shows the existence of other jobs which the claimant can perform, then the overall burden remains with the claimant. See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from performing past relevant work; and

(5) whether the impairment prevents the claimant from doing any other work.

4

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

## Background

Pursuant to this court's Local Rule 9.1(d), the parties have filed a Joint Statement of Material Facts.  As this document is part of the court's record (document no. 8), a detailed factual background need not be provided in this order.  Accordingly, only a brief account of the case's procedural history follows.

Claimant filed an application for disability benefits on November 13, 1996, alleging that he became unable to work due to a disabling condition on April 13, 1993.  Claimant described his disabling condition as "[l]unotriquetral instability right wrist and similar mid[-]carpal shift on the left wrist. [R]ight hip pop in and out when doing heavy weight lifting. [T]his is from an old worker's [compensation] injury."  (R. at 99.)[2]  Claimant's application was denied on December 12, 1996, and again on

---

2Citations to the record are to the certified transcript of record filed by the Commissioner with the court.

5

reconsideration on March 27, 1997.  Claimant requested, and was given, a hearing before an ALJ.  On January 12, 1998, the ALJ issued a decision denying claimant disability benefits.

The ALJ found that claimant had not engaged in substantial gainful activity since his alleged onset date.  The ALJ further determined that claimant had severe impairments consisting of right wrist derangement and degenerative arthritis.  The ALJ also found, however, that although claimant suffered hip pain and had been diagnosed with iliotibial band syndrome, his hip impairment was not severe.  Furthermore, the ALJ concluded that none of claimant's impairments, either alone or in combination, met or equaled a listed impairment.

In assessing claimant's residual functional capacity ("RFC"), the ALJ found that claimant could lift and carry 20 pounds occasionally and 10 pounds frequently with his left hand, but only 5 pounds with his right.  The ALJ found claimant's RFC to be further limited by the need to avoid "rapid, repetitive movements with his dominant right wrist and . . . working in cold, damp environments."  (R. at 19.)  The ALJ also concluded that claimant could balance, kneel, stoop, crouch and crawl occasionally and that he had no mental functioning limitations.

The ALJ found that in light of his RFC, claimant could not perform his past relevant work as a laborer, carpenter, route driver and grinder.  The ALJ concluded, however, that claimant could perform other work that existed in the significant numbers in the regional and national economies, namely, the jobs of photo

6

machine processor, usher/lobby attendant, and security guard. The ALJ therefore found that claimant was not disabled.

Claimant sought review by the Appeals Council, which denied his request on September 4, 1998. Claimant now appeals to this court.

## Discussion

Claimant argues that the ALJ's decision is erroneous because it failed to account for the disabling effects of claimant's hip impairment and because it failed to give proper weight to the limitations noted by claimant's treating physicians. Claimant does not elaborate on the first alleged error. The court notes, however, that the ALJ did consider the extent of claimant's hip problems in finding, at step two of the sequential analysis, that the impairment was not severe. The ALJ stated:

> The record also documents that the claimant experiences hip pain and has been diagnosed with an iliotibial band syndrome. By his own admission, this has been an episodic problem for approximately 20 years. X-rays of the claimant's hip have been reported to be normal and his hip range of motion was described as within normal limits. The claimant described his symptoms as intermittent and, therefore, his treating physician felt that this problem would be difficult to treat with medication. The physician did recommend conservative care including a regular stretching program and over-the-counter anti-inflammatory medication for the pain. Because there has been only one occasion in which the claimant has sought treatment for this problem and because the claimant, by his own admission has acknowledged that this problem is episodic and does not appear to interfere with his activities of daily living, I find that his hip problem is "not severe."

(R. at 15-16.)

7

A finding that an impairment is not severe does not, however, remove that impairment from further consideration, provided that one or more other impairments are severe (i.e., provided that the sequential analysis proceeds beyond step two). In determining a claimant's RFC, the ALJ must consider all of claimant's impairments, including those that are not severe. See 20 C.F.R. § 404.1545(e); SSR 96-8p, 1996 WL 374184, at *5 (Social Security Administration July 2, 1996). "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may - when considered with limitations or restrictions due to other impairments - be critical to the outcome of a claim." SSR 96-8p, 1996 WL 374184, at *5.

The ALJ here discussed claimant's complaints of hip pain in determining his RFC. Although the ALJ did not explicitly explain what effect, if any, claimant's hip problem had on his RFC, the ALJ gave the impairment sufficient consideration. The court also notes that claimant himself stated that his hip bothered him when doing heavy lifting. Since the RFC determined by the ALJ limited claimant's lifting ability to no more than 10 pounds frequently and 20 pounds occasionally, with no more than 5 pounds to be lifted with his right hand, it appears to have effectively, if not intentionally, accounted for claimant's hip impairment.

Claimant also argues that the ALJ failed to give appropriate weight to limitations found by his treating physicians. To the contrary, the ALJ specifically noted that she "attached

8

considerable weight to the opinion of Dr. Bloom, the claimant's treating physician, who felt that the claimant had a significant work capacity, but should avoid tasks that require heavy lifting and carrying or activities that required the repetitive use of his wrist." (R. at 21.) Claimant also considers Dr. Lawrence Gray, a plastic surgeon he consulted in June, 1997, to be a treating physician whose opinion is entitled to greater weight than that of a non-treating physician. See 20 C.F.R. § 1527(d)(2) (Social Security Administration will generally give more weight to opinions of treating practitioners). Claimant notes that Dr. Gray completed a medical evaluation of claimant's ability to perform work-related activities. He opined that claimant could not lift more than 5 pounds, and that his abilities to handle, feel, push, pull and tolerate vibration were affected by his impairment. Dr. Bloom did not continuously note such limitations.[3]

Claimant fails to explain how any of these limitations precludes the performance of any occupation the vocational expert identified as within his capabilities. Indeed, as for the five pound lifting restriction, the vocational expert specifically testified that such a limitation would not affect the occupational base she had indicated.

---

[3]Dr. Bloom did note on April 28, 1993, less than three weeks after claimant had arthroscopic surgery, that claimant was restricted to "no forceful push or pull," (R. at 150), but does not refer to such a limitation thereafter.

Moreover, the ALJ was entitled to give Dr. Bloom's opinion greater weight than Dr. Gray's. Social Security Administration regulations provide that "[g]enerally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(i). Dr. Bloom treated claimant for his wrist problems from April of 1992 through January of 1997. During that time, claimant was seen by Dr. Bloom no fewer than fourteen times, not including Dr. Bloom's performance of arthroscopic surgery on claimant's wrist in 1993 and a post-surgical follow-up with another practitioner in Dr. Bloom's office. The record indicates only three visits to Dr. Gray, on June 19 and 26, 1997, and December 4, 1997, on which date Dr. Gray completed a medical assessment form for claimant. Although Dr. Gray saw claimant more recently than Dr. Bloom, claimant's testimony at the hearing indicated that his condition had deteriorated little if any during 1997. Claimant testified: "I think it's staying the same if not getting a little worse." (R. at 38.)

The ALJ also asked claimant about his ability to perform daily living activities, including those requiring dexterity and handling or feeling ability, such as buttoning a shirt (which claimant stated he could do) and tying shoes (which claimant was less clear about, testifying that he left his shoes tied loosely so he could slip in and out of them without having to tie the laces). The ALJ could use such testimony to determine what

10

weight to give Dr. Gray's opinion on claimant's limitations.  See 20 C.F.R. § 404.1527(d)(6)("When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion."); Ogburn v. Commissioner of Social Sec. Admin., 992 F. Supp. 882, 888 (E.D. Tex. 1997)("Considering the conflicting evidence from plaintiff's earlier treating physicians, and plaintiff's own testimony regarding his physical ability, the court finds that the ALJ had good cause to place less weight on [another doctor's] single, conclusory report.").

The court finds that there is substantial evidence in the record to support the Commissioner's decision.  Accordingly, that decision is affirmed.


## Conclusion

For the foregoing reasons, the claimant's motion to reverse the decision of the Commissioner (document no. 5) is denied and the Commissioner's motion for order affirming the decision of the Commissioner (document no. 7) is granted.


**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 9, 1999

cc:  Vicki S. Roundy, Esq.
     David L. Broderick, Esq.

11