Bertha BARFIELD, Plaintiff,

v.

Jo Anne B. BARNHART,[1] Commissioner of Social Security Administration, Defendant.

No. CIV.A. H–02–0026.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 8, 2002.

1. Jo Anne B. Barnhart became the Commissioner of the Social Security Administration effective November 9, 2001, and, accordingly, is substituted for Larry G. Massanari as the defendant in this matter.

William C Herren, Herren Law Office, Houston, for Bertha Barfield, plaintiff.

Joseph B Liken, OGC Social Sec Admin, Dallas, for Jo Anne B Barnhart, Commissioner of SSA, defendant.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

This Social Security Act appeal was referred to Magistrate Judge Calvin Botley pursuant to 28 U.S.C. §§ 636(b)(1)(B). On July 19, 2002, Magistrate Judge Calvin Botley issued an Amended Memorandum and Recommendation [Doc. # 17], suggesting that this Court grant Defendant's Motion for Summary Judgment [Doc. # 13], and deny Plaintiff's Motion for Summary Judgment [Doc. # 10]. The time for objections to be filed by the parties as to the Memorandum and Recommendation has expired without any objections having been filed. The Court finds that the Magistrate Judge's Amended Memorandum and Recommendation is well founded, and that the Magistrate Judge's recommended dispositions should be adopted.[1] It is therefore

**ORDERED** that the **Amended Memorandum and Recommendation** [Doc. # 17] is **adopted** as this Court's Memorandum and Order. It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 13] is **GRANTED.** It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 10] is **DENIED.** It is further

**ORDERED** that this case is **DISMISSED with prejudice.**

A final judgment will be entered separately.

## AMENDED MEMORANDUM AND RECOMMENDATIONS

A Memorandum and Recommendations (Entry # 15) was entered in this cause of action on July 15, 2002. However, due to a typographical error, the Memorandum and Recommendations is hereby **AMENDED.**

Plaintiff Bertha Mae Barfield ("Barfield") seeks judicial review of the Social Security Administration's ("SSA") denial of her claim for disability benefits and supplemental security income provided by Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 426 and 1381a, respectively. *See* Plaintiff's Motion for Summary Judgment and Supporting Memorandum (Entry # 10 and # 11).[2] Defendant Jo Anne B. Barnhart, Commissioner of the Social Security Administration ("Commissioner"), urges her decision denying Bar-

---

1. Since there are no objections, the Court has not made a *de novo* review of this matter.

2. Plaintiff's Motion for Summary Judgment (Entry # 10) and Memorandum in Support (Entry # 11) will henceforth be referred to as one instrument, Motion for Summary Judgment (Entry # 10).

field's claim for benefits be upheld and maintains that Barfield does not have a severe medical impairment and, in the alternative, can perform a wide range of at least medium level work activity. *See* Defendant's Response to Plaintiff's Motion for Summary Judgment and Supporting Memorandum (Entry # 13 and # 14).[3]

Barfield contends that the administrative law judge ("ALJ") wrongfully determined that she is not disabled as a consequence of failing to positively, and clearly, conclude from her medical records that she does not have a severe medical impairment. *See* Plaintiff's Motion for Summary Judgment (Entry # 10). Barfield maintains that the ALJ's decision should be remanded, contending that it is not predicated upon substantial evidence and does not comply with applicable legal standards.

Conversely, the Commissioner contends that her finding that Barfield does not have a severe medical impairment is based on a complete review of her medical records, including the opinions of consulting physicians. *See* Defendant's Motion for Summary Judgment (Entry # 13). Accordingly, the Commissioner reaffirms the ALJ's determination that Barfield does not have a severe medical impairment, and that this determination is based on substantial evidence and proper application of the relevant legal standards. The Commissioner disputes Barfield's claims, and contends that affirming the denial of benefits is the only proper conclusion in this matter.

3. Defendant's Motion for Summary Judgment (Entry # 13) and Memorandum in Support (Entry # 14) will henceforth be referred to as one instrument, Motion for Summary Judgment (Entry # 13).

4. References made to statements taken from that portion of the administrative record iden-

## THE FACTUAL AND PROCEDURAL BACKGROUND

### *The Pertinent Factual Background— The Medical History and Alleged Impairments*

Bertha Mae Barfield, born April 25, 1944, is 58 years old and has an eleventh grade education. (T. 121).[4] She has past work experience as a dietary aide, cafeteria worker, office cleaner, and motel maid, as well as previous experience as a nursery worker and doing "contract work." (T. 136; R. 52, 57). Barfield last worked in 1997 as a motel maid at La Quinta Inn, and stopped working on April 1, 1997, due to lower back pain, though she also complained of ankle pain from a previous fracture and upper respiratory problems. (T. 127, 134; R. 48).

Barfield first sustained back problems in the 1980's following a job injury. She presented to Dr. Clarence A. Riser sometime in 1986, who reported that she had "pulled muscles" and arthritis of the back, which was discovered in an x-ray. Later that year, Barfield presented to Dr. Saeed Kahkeshani, who performed a magnetic resonance imaging ("MRI") scan of her back, which revealed a bulging disc. No surgery, however, was prescribed. (R. 49).

In 1994, Barfield broke her left ankle, which required a steel plate and five screws to repair. The surgery was performed at the John Sealy Hospital at the University of Texas Medical Branch ("UTMB"), in Galveston, Texas. *Id.* Barfield also broke her right index finger in

tified as the "transcript" of the administrative hearing are designated "T", followed by the applicable page number(s) of the record. References made to items contained in the remainder of the record are designated "R", followed by the applicable page number(s).

1997 but did not seek medical treatment because she could not afford it. (R. 62).

The SSA referred Barfield to Dr. Philip Wisiackas for a consultative examination on September 3, 1998. A physical exam revealed that her back had some pain to palpation, and muscle spasms. X-rays of her back revealed that Barfield had "L3–4 disc disease with osteophytic, arthritic changes of the lumbar spine." Her condition caused intermittent circumferential leg numbness that occurred daily, which she alleviated by moving around. Barfield also had trouble bending forward; however, she had no focal neurological deficits, and no asymmetric muscle strength or sensory deficit. Dr. Wisiackas reported that Barfield's ankle had good range of motion and did not lock up, and that she experienced more pain in cold and rainy weather. Although Barfield had a limp and increased activity caused more ankle pain, she did not need a brace or cane to walk. (R. 90–93).

Dr. Wisiackas diagnosed Barfield's respiratory problems as a "combination of an early shortness of breath and fibrosis [of the lungs] due to chronic smoking and perennial and seasonal sinusitis, allergic sinusitis and bronchitis." X-rays did not reveal any chronic obstructive pulmonary disease, clubbing, or cyanosis. Barfield did have slight difficulty breathing during the examination procedures, but Dr. Wisiackas believed her condition should improve if she quit smoking and took anti-allergy medication. *Id.*

Overall, Dr. Wisiackas found no gross disorganization of motor function, and overall dexterity and fine motor movements of the hands were intact, except for the right index finger. He also reported that Barfield could walk one mile without increased ankle pain or shortness of breath, and had "no chest pain." She could also sit for two hours with increased back achiness, and stand for 30 minutes with increased left ankle pain. She could climb only one flight of steps with shortness of breath and increased ankle pain. Barfield does not, however, require assistance to provide for her own needs, or to walk around. *Id.* She also retained a full range of motion of the extremities. (R. 95).

On October 16, 1998, Barfield underwent a consultative examination with Dr. Vishnu V. Kalidindi for her back pain. Although her ankle fracture was noted in her medical history, no mention was made of its residual effects. Dr. Kalidindi reported that she had a lumbar strain, with no serious deficiencies, and prescribed conservative treatment. (R. 107).

Barfield later presented to the Cleveland Regional Medical Center in Cleveland, Texas, via ambulance on January 9, 1999, due to muscle spasms in her lower back. Dr. Charles Foutz reported that Barfield suffered from a lumbar strain and prescribed Flexeril for her muscle spasms, and Darvocet–N–100 and Ibuprofen for the pain. Dr. Foutz also reported that Barfield's reflexes were intact. (R. 108–110).

Barfield's medical history also indicated she underwent a vaginal hysterectomy, although the record reveals she did not have her ovaries removed and she is not taking any hormone replacements. (R. 68, 91). She also claims to have had double pneumonia, and muscle spasms in "the main artery to [her] heart" when she was 36 years old, which was treated with medication, though there is no evidence in the record to support this claim. (R. 76). Barfield, additionally, alleges that she is a "free bleeder," without medical support. (R. 62).

Efforts to obtain more of Barfield's medical records have proven unsuccessful. A request for her records from UTMB, for the period from January 1, 1996 to the

present date, revealed the hospital had no file for Barfield. (R. 88–89). A later request for her medical records from the Strawberry Clinic revealed that she was last seen there in 1994, well before the alleged onset date of disability. (R. 83). A request for her records from Ben Taub General Hospital also proved unsuccessful. (R. 105).

### The Procedural Background—The Administrative Proceedings and Exhaustion of Administrative Remedies

Barfield filed applications with the Social Security Administration seeking a period of disability and supplemental security income benefits on July 7, 1998. (R. 44–46). These applications were denied. (R. 25–28, 31–34).

Barfield then filed a timely request for a hearing (R. 35–36), which was held on June 28, 1999. Also in attendance was Herman Lit, a vocational expert. (R. 115–141). The ALJ found that Barfield did not have a severe medical impairment, and that she could perform at least medium level work available in the regional and national economy. Thus, the ALJ found that Barfield was not disabled and, therefore, not entitled to social security benefits. (R. 15–20).

Barfield filed a timely request for review of the hearing decision. (R. 111). The Appeals Council, however, declined to review the decision. (R. 9–11). Barfield submitted new evidence for the Appeals Council to consider (R. 8), but the Appeals Council, once again, declined to review the decision. (R. 6–7). Barfield has, therefore, exhausted all administrative remedies prior to seeking judicial review, and, accordingly, the Court has the proper authority, conferred statutorily, with which to commence its review.[5] *See Sims v.*

*Apfel,* 530 U.S. 103, 107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); *Weinberger v. Salfi,* 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Jackson v. Apfel,* 234 F.3d 246 (5th Cir.2000); *McQueen v. Apfel,* 168 F.3d 152, 155 (5th Cir.1999); *see also* 42 U.S.C. § 405(g); 28 U.S.C. § 1383(c)(3) and 20 C.F.R. § 404.981 and/or 20 C.F.R. § 416 (2001), *as applicable.*

### STANDARDS OF REVIEW

#### The Motion for Summary Judgment

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (*quoting* Fed. R.Civ.P. 56(c)); *see also Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998); *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir.1993). The moving party bears the burden of showing that there is an absence of evidence to support the nonmoving party's case. *Id.* A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also PYCA Industries, Inc. v. Harrison County Waste Water Management District,* 177 F.3d 351, 361 (5th Cir. 1999); *Crowe v. Henry,* 115 F.3d 294, 296 (5th Cir.1997). The substantive law dictates which facts are considered "material." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir.), *cert. denied,* 528 U.S. 906, 120 S.Ct. 249, 145 L.Ed.2d 209 (1999); *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 189 (5th Cir.1991). An issue is material if its resolution could affect the out-

5. This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Rule 72, Fed.R.Civ.P. *See* Order of Referral (Entry # 4).

come of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505. Facts may be gleaned from reviewing the pleadings, answers to interrogatories, admissions, and affidavits on file. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)(en banc). In deciding whether a fact issue has been created, all justifiable inferences must be viewed in the light most favorable to the nonmoving party, and questions of law are reviewed *de novo. Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Merritt–Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir.1999); *Horton v. City of Houston*, 179 F.3d 188, 191 (5th Cir.1999). If the summary judgment motion is properly supported, however, the burden shifts from the movant to the adverse party, who may not rest on mere allegations or denials but must set forth specific and supported material facts of significant probative value, establishing that there exists a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *International Association of Machinists and Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir.2000); *Union Planters National Leasing, Inc. v. Woods*, 687 F.2d 117, 119 (5th Cir.1982).

### The Administrative Determination

A review of the Commissioner's decision to deny disability benefits compels a determination of whether substantial evidence in the record supports the decision, and whether proper legal standards were used in evaluating the evidence. *Loza v. Apfel*, 219 F.3d 378, 389 (5th Cir.2000); *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir.2000); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir.1999); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir.1999). "Substantial evidence" means that which is more than a *scintilla* but less than a pre-

ponderance; and, it is evidence of such relevance that a reasonable mind would accept it as adequate to support the conclusion reached. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995)(*per curiam*). The Court is not, however, allowed to reweigh the evidence, retry the facts *de novo*, or substitute its judgment for that of the Commissioner. *Id.; see also Randall v. Sullivan*, 956 F.2d at 109, *reh. denied* (5th Cir.1992). Any finding that there is no substantial evidence to support the Commissioner's determination is appropriate only if no credible evidentiary choices or medical findings exist to support the decision, *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir.1997); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995), thereby compelling a "[j]udicial review [that is] deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d at 496; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir.1986).

### Determining the Existence of an Eligible Disability

To determine the existence of an eligible disability, there must, initially, be an evaluation of whether the claimant was unable to perform substantial gainful work existing in the national economy because of a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months. 42 U.S.C. §§ 416(1), 423(d)(1)(a); *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 796, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *McQueen v. Apfel*, 168 F.3d at 154; *Greenspan v. Shalala*, 38 F.3d 232, 236, *reh. denied, cert. denied,* 514 U.S.

1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (5th Cir.1995).

A five-step sequential process is utilized by the ALJ to determine whether a claimant qualifies for disability benefits. *See* 20 C.F.R. § 404.1520(b)-(f)(1991); *Loza v. Apfel*, 219 F.3d at 390; *Leggett v. Chater*, 67 F.3d at 563. The claimant has the burden of establishing the first four steps of the five-step sequential process by establishing a severe impairment which prevents the claimant from performing past relevant work. In this five-step process, the ALJ considers:

1) whether the claimant is currently engaged in substantial gainful activity, as an individual who is working and engaging in substantial gainful activity will not be found disabled, regardless of the medical findings;

2) whether the claimant has a severe impairment;

3) whether the claimant meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, as such an individual will be considered disabled without consideration of vocational factors;

4) if an individual is capable of performing the work they did in the past, a finding of not disabled must be made; and,

5) if an individual's impairment precludes them from performing their past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if there is any work in the national economy that the individual can perform.

20 C.F.R. § 404.1520(b)-(f); *see also, Carey v. Apfel*, 230 F.3d 131, 134–35 (5th Cir.2000); *Brown v. Apfel*, 192 F.3d at 498; *Leggett v. Chater*, 67 F.3d at 566.

The Commissioner bears the burden as to the fifth step of the process. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir.2001). If the Commissioner meets this burden, the claimant must then prove that he or she cannot, in fact, perform the alternate work suggested. *Carey v. Apfel*, 230 F.3d at 135. If, at any of step of the analysis, the ALJ finds that the claimant is or is not disabled, the inquiry is terminated. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Myers v. Apfel*, 238 F.3d at 619.

## DISCUSSION

### I. The ALJ Used Proper Legal Standards for Determining the Severity of Barfield's Impairment

### A. The ALJ Did Not Err in Placing the Burden of Proving a Severe Medical Impairment on Barfield

In disability determination cases, the claimant bears the burden of proving his or her impairment and, at step two of the evaluation process, must establish that the alleged impairment is severe. Medical evidence must be provided by the claimant, and only the evidence received will be considered. 20 C.F.R. § 404.1512(a) (1985). Evidence of a physical or mental impairment must consist of "signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508 (1991); *see also* 20 C.F.R. § 404.1528(a) (1980) (the claimant's statements alone are not enough to establish an impairment).

An impairment, or combination of impairments, will not be considered severe if it "does not *significantly limit* [a claimant's] physical or mental ability to do basic work activities," without consideration of age, education, or work experience. "Basic work activities" are those abilities and aptitudes necessary to do most jobs, and in

this case, the following physical functions are at issue: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1521 (1985); *see also Bowen v. Yuckert,* 482 U.S. at 146–48, 107 S.Ct. 2287 (upholding the validity of the regulation).

The Fifth Circuit Court of Appeals considered the standard described in *Stone v. Heckler, supra,* to mean that an impairment is considered "not severe" only if "it is a *slight abnormality* [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone v. Heckler,* 752 F.2d 1099, 1101 (5th Cir. 1985); *see also* Anthony v. Sullivan, 954 F.2d 289, 294–95 (5th Cir.1992). The SSA has adopted this interpretation, as well. Social Security Ruling ("SSR") 85–28.

Barfield failed to meet her burden of proving she has a severe medical impairment. She presents little evidence to support her claim of disability resulting from her lower back impairment, post fractured ankle, and upper respiratory problems. She instead relies on her own testimony without supporting medical evidence, which is not sufficient to prove disability. Moreover, Barfield makes inconsistent claims. In several documents, she claimed she became disabled on April 1, 1997. (R. 44, 54). In the SSA's disability report, however, Barfield claimed that her condition first bothered her on April 1, 1997, and that her condition did not force her to stop working until April 1, 1998. (R. 48). Although this may have been a clerical error, it is not the only discrepancy. Barfield also claimed that Dr. Clarence A. Riser treated her for pulled back muscles and arthritis, while Dr. Saeed Kahkeshani performed a magnetic resonance imaging ("MRI") scan and found a deteriorating bulging disc in her back. (R. 49). The

SSA's pain report revealed, however, that Barfield stated that Dr. Riser actually performed the MRI scan and that Dr. Kahkeshani determined that she had arthritis. (R. 76). Barfield also claimed that she spent her days "sweeping, cooking, cleaning...doing laundry [and normal housework]." (R. 64). These activities allegedly caused her pain and made her pain worse. (R. 70, 74). These activities also, however, demonstrate that she could perform the basic work activities referred to in 20 C.F.R. § 404.1521(b). Barfield later retracted these statements, alleging that she cannot, in fact, do any of these activities, although her claims remain unsupported by the medical evidence. (R. 77).

■ Here, the ALJ clearly stated that she was using the same interpretation of "severe" as required by the Court in *Stone,* 752 F.2d at 1106, and appropriately focused on Barfield's physical capabilities to do basic work activities (R. 18–19), and Barfield has failed to establish that the ALJ utilized an improper legal standard. The ALJ, therefore, used the proper legal standard in arriving at her decision.

**B. The ALJ Utilized Every Reasonable Effort to Properly and Fully Develop Barfield's Medical History and Properly Provided a Consultative Examination**

Barfield claims that the ALJ prematurely determined that she does not have a severe impairment, based on insufficient evidence; however, the ALJ made every reasonable effort to collect Barfield's medical records. Before the SSA can make a determination regarding disability, they must develop a complete medical history for at least the twelve months preceding the month when the claimant filed his or her application, unless the disability was alleged to have begun less than twelve months prior or development of an earlier medical record is necessary. The SSA

must make every reasonable effort to obtain these records, meaning if the records are not received by the SSA after an initial request, they will make one follow-up request to obtain the medical records from the claimant's medical sources ten to twenty days after the initial request is made. If the claimant's records are not readily available after the SSA has made every reasonable effort to obtain them, they must provide a consultative examination to further evaluate the claimant. 20 C.F.R. § 404.1512(d) and (f).

■ The SSA tried to obtain Barfield's medical history but no relevant medical records were found at the hospital or clinic referenced by Barfield. Although the Strawberry Clinic is listed in her disability report (R. 50), Barfield has not been treated there since 1994. (R. 83). No records were found at the University of Texas Medical Branch at Galveston for the dates of January 1, 1996 to the date of the request. (R. 88–89). No relevant records were found at Ben Taub General Hospital either, as Barfield was last seen there on September 15, 1994. (R. 105). The SSA, thus, properly referred her to Dr. Philip Wisiackas for a consultative examination in order to obtain a report of her current medical condition (R. 90–96), and utilized every reasonable effort to develop Barfield's medical history.

## II. There Is Substantial Evidence to Support the ALJ's Decision that Barfield's Impairment Is "Not Severe"

■ In addition to Barfield's inconsistent claims and lack of medical evidence to support her allegations, there is ample medical evidence establishing that she does not have a severe medical impairment. Dr. Wisiackas reported that Barfield has "an L3–4 disc disease with osteophytic, arthritic changes of the lumbar spine," but there was no evidence of a bulging disc. Additionally, Barfield has no focal neurological deficits, no gross disorganization of motor function, and no sensory loss or radicular distribution. She also has no deficiency of position or pain sensation. Barfield maintained a full range of motion in her extremities, and "her overall dexterity and fine motor movements of the hands are intact except for residual of a previous right index finger fracture." (R. 92, 93).

Barfield's ankle showed a normal ankle joint space, although there was some cystic degeneration in and around the orthopedic plate that was inserted to support her ankle. Nevertheless, the screws securing the plate were in good position. Further, although Barfield feels pain after 30 minutes of standing, her ankle does not lock up and does not experience continuous pain. Dr. Wisiackas also reported that Barfield could walk for one mile before feeling increased pain. (R. 90, 92–93).

In regards to Barfield's alleged upper respiratory illness, Dr. Wisiackas found no chronic obstructive pulmonary disease, and determined that Barfield experienced only slight dyspnea during the examination. The physician found that Barfield suffered from shortness of breath and fibrosis, but that these conditions might be improved if she quit smoking and took anti-allergic medications. Dr. Wisiackas also found that Barfield did not experience any chest pain. *Id.*

These medical findings clearly indicate that Barfield does not suffer from a severe impairment. Two subsequent consulting physicians reported Barfield merely had a lumbar strain and prescribed conservative treatment. (R. 107–110); *see also Anthony v. Sullivan*, 954 F.2d at 295–96 (consulting physician's report and the claimant's daily activities, in light of the claimant's lack of objective medical evidence and prescribed medication, are substantial evidence supporting the ALJ's

decision that the claimant's impairments are not severe). Barfield maintains, however, that Dr. Wisiackas' consultative examination does not specifically mention, or determine, her functional capacity to perform basic work activities. (R. 113–14); *see also* Plaintiff's Motion for Summary Judgment (Entry # 10). An SSA residual functional capacity ("RFC") report, however, reported that Barfield had absolutely no physical limitations whatsoever. (R. 97–104). The ALJ properly relied on the RFC report in reaching her decision. (R. 18).

Alternatively, the ALJ established that Barfield could perform other substantial gainful activity, by taking into consideration her age, education, work experience, as well as the testimony of the vocational expert, Herman Lit, to conclude that she could perform all of her past relevant work. (R. 137). Barfield was able to perform other kinds of medium level work such as laundry work, sandwich making, and grocery sacking, jobs which exist in substantial numbers in the regional and national economies. (R. 138–39). Even after taking into consideration certain limitations, such as the ability to sit for only two hour intervals and stand no longer than 30 minutes at a time, the vocational expert testified that Barfield could perform light level work as a small products assembler, electrical accessories assembler, or toy assembler. These jobs also exist in substantial numbers in the regional and national economies. (R. 139).

A total review of the record, therefore, shows there is substantial evidence to support the ALJ's decision that Barfield's impairments are not "severe", as the term is defined in *Stone v. Heckler, id.* Additionally, the ALJ also established that Barfield can perform other work that exists in substantial numbers in the regional and national economies. Thus, even if Barfield's impairments were severe, she is definitely not disabled.

## CONCLUSION

Following a review of the entire record, it is **RECOMMENDED** that the ALJ's decision be **AFFIRMED** as the findings comport with applicable legal standards and the substantial evidence and, accordingly, there has not been presented in this matter a genuine issue necessitating the reversal of the Commissioner's decision. It is, therefore,

**RECOMMENDED** that the Commissioner's Motion for Summary Judgment (Entry # 13) be **GRANTED.** It is further

**RECOMMENDED** that Barfield's Motion for Summary Judgment (Entry # 10) be **DENIED.** Further, it is

**RECOMMENDED** that Final Judgment be entered in favor of the Commissioner and that this matter be **DISMISSED** from the Court's docket.

The Clerk shall file this Memorandum and Recommendations and provide the parties with a true copy. The failure to file written objections to the proposed findings and recommendations within ten (10) days of the entry of this Memorandum and Recommendations may bar an aggrieved party, except upon grounds of plain error, from attacking the proposed factual findings and legal conclusions on appeal. *See Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir.2000); *Douglass v. United Services Automobile Assoc.,* 79 F.3d 1415, 1424 (5th Cir.1996)(*en banc* ); *see also Crawford v. Falcon Drilling Co., Inc.,* 131 F.3d 1120, 1123–24 (5th Cir.1997); and, 28 U.S.C. § 636(b)(1)(C).

July 18, 2002.