United States Court of Appeals,

Fifth Circuit.

No. 95-50058

Summary Calendar.

Don E. LEGGETT, Plaintiff-Appellant,

v.

Shirley E. CHATER, Commissioner of the Social Security
Administration, Defendant-Appellee.

Oct. 30, 1995.

Appeal from the United States District Court for the Western
District of Texas.

Before WISDOM, DAVIS and STEWART, Circuit Judges.

WISDOM, Circuit Judge:

The plaintiff/appellant asks this Court to review the decision

of the Commissioner of Social Security (Commissioner) denying his

application for disability benefits.[1]  Specifically, the plaintiff

alleges that the Commissioner's decision is erroneous because it is

not supported by substantial evidence and does not properly weigh

the opinion of the plaintiff's treating physicians.  Additionally,

he requests that this Court remand his case to the Commissioner to

consider new evidence of his mental disability.  We, however, agree

with the findings of the earlier proceedings and, accordingly, we

AFFIRM.

I.

_____

[1]Pursuant to the Social Security Independence and Program
Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464
(codified in scattered sections of 42 U.S.C.), the Commissioner
of Social Security assumed the role previously held by the
Secretary of Health and Human Services in such proceedings.

The claimant, Don Leggett, filed an application for Social Security benefits on August 30, 1991, for alleged disabilities stemming from a July 2, 1991, heart attack. The Social Security Administration timely denied Leggett's application both initially and on reconsideration. Leggett then requested a hearing before an Administrative Law Judge (ALJ), who also denied his disability application. The Appeals Council declined Leggett's request for review, making the ALJ's decision the final decision of the Commissioner. Leggett next sought review in federal district court. The federal magistrate, to whom the case was assigned, denied relief to Leggett, thereby generating one basis for this appeal.

After the ALJ's decision, Leggett refiled for disability benefits, this time basing his application on alleged mental impairments. Unlike his former application, the Commissioner granted his new application for disability benefits. This event serves as another basis for Leggett's appeal.

II.

Leggett, born May 31, 1939, has a high school education. He worked for a chemical company from 1962 to 1985, a restaurant equipment company from 1986 to 1989, and a food vending machine company for the last part of 1989. All of these positions required Leggett regularly to lift items weighing at least 25 pounds. At the time of Leggett's heart attack, which is described below, he was working as a cashier in a convenience store. This position required Leggett to wait on customers, complete a daily report, and

2

stock the shelves.  To perform the stocking duties, Leggett carried containers in excess of ten pounds.

On July 2, 1991, while moving some cartons at the convenience store, Leggett suffered an acute myocardial infarction (heart attack).  He entered a hospital, which performed a cardiac catheterization on him.  This test revealed an 80 percent stenosis (narrowing) in one branch of a bifurcated diagonal vessel and a 50 to 60 percent occlusion (blockage) in the right coronary.  Chest X-rays suggested chronic obstructive pulmonary disease (COPD) and diffuse interstitial fibrosis (hardening of the lung tissues).  After seven days, Leggett was discharged from the hospital, placed on medication, ordered to stop smoking, and allowed to participate in non-strenuous physical activities.

Experiencing chest discomfort, Leggett returned to the hospital on July 19, 1991.  Dr. Salmon took X-rays of Leggett, which revealed a mild cardiomegaly (enlargement of the heart) with mild to moderate vascular congestive change.  An echocardiogram taken at this time showed that Leggett's heart is normal, except for posterior and inferior hypokinesis (lack of active muscular contraction) and mild aortic regurgitation (blood flowing backwards into the heart).  Dr. Salmon adjusted Leggett's medications and released him.

Leggett took a treadmill stress test on August 21, 1991.  The test revealed areas of reversible ischemia (lack of blood supply) in the anterior and lateral wall of the left ventricle and Leggett complained of some pain in his left shoulder.  Nevertheless, Dr.

3

Williams found Leggett to have "good exercise tolerance". Following the test, Dr. Williams again adjusted Leggett's medications.

In an attempt to alleviate Leggett's persistent shoulder pain, on September 6, 1991, Dr. Williams performed balloon coronary angioplasty on Leggett to try to open a vessel that had an 80 percent stenosis. The procedure, however, was not successful in restoring the blood flow. Dr. Williams then instructed Leggett that he would have to learn to live with some of the pain and that he was not to restrict physical activity, even permitting Leggett to return to work the following day.

During a November 18, 1991, office visit, Dr. Williams noted that Leggett had several instances of heart racing and that Leggett was anxious about his condition. Dr. Williams concluded, however, that Leggett's "symptoms [are] disproportionate to the objective degree of coronary disease".

Leggett complained to Dr. Williams of headaches, depression, and anxiety during a March 11, 1992, office visit. Leggett also said that he was experiencing pain when he walked and some pain in his left arm. Dr. Williams determined that the arm pain was not cardiac related. Leggett then complained to Dr. Williams of the same problems on April 6, 1992. A physical examination revealed that Leggett's symptoms were normal, but at this point, Dr. Williams characterized his symptoms as "basically chronic, refractory, and debilitating".

Dr. Williams examined Leggett again on September 8, 1992, and

4

on March 29, 1993.  On both occasions, Leggett repeated his earlier complaints.  Additionally, during the March examination, Leggett complained that his ankles swell when he walks, but Dr. Williams found no swelling during the examination.

Finally, a pulmonary function study conducted on June 28, 1993, revealed moderate signs of shortness of breath, the severity of which was not disabling on its own.

## III.

In addition to the above facts, the ALJ also relied on testimony from a medical expert, a vocational expert, and Leggett himself.  After reviewing Leggett's medical history, the medical expert concluded that Leggett has coronary artery disease.  He found no evidence, however, to link Leggett's headaches to this disease.  The medical expert further noted that Leggett's alleged COPD could aggravate the coronary artery disease, but that more tests were needed.  In closing, the medical expert stated that Leggett is capable of performing sedentary work in an environment devoid of dust and extreme temperatures and that he should be capable of ordinary physical activities.

Furthering the testimony of the medical expert, the vocational expert testified that Leggett is not capable of performing any of his past jobs as they were actually performed because those positions required physical exertion in excess of a sedentary level. The vocational expert added, however, that generally in the national economy, cashier positions range from medium-level work to sedentary.

With respect to his post-heart attack activities and condition, Leggett testified that he takes care of his three daughters, aged 9, 11, and 13. In a typical day, he stated that he prepares their breakfast, gets them ready for school, and cleans the house. After these chores, he said that he rests for an hour. In the afternoon, Leggett again cares for his daughters, but this time he does not rest. Leggett also stated that he is able to cut the grass in small increments and to walk six blocks at a time before having to rest. Finally, Leggett complained of swelling in his legs, ankles, and hands if he sits or stands too long; headaches; and difficulty breathing.

## IV.

To determine whether a claimant qualifies as "disabled" under 42 U.S.C.A. § 423(d)(1)(A) (West Supp.1995), the Commissioner uses a sequential five-part inquiry.[2] The burden of proof lies with the claimant to prove disability under the first four parts of the inquiry.[3] This inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.[4] The Commissioner's

---

[2]The five-step analysis requires the Commission to consider: 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the regulation, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial gainful activity. 20 C.F.R. § 404.1520 (1995); *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).

[3]*Greenspan,* 38 F.3d at 236.

[4]*Id.*

decision is granted great deference[5] and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law.[6]

A review of the record reveals that the Commissioner's determination that Leggett is not disabled, as rendered by the ALJ, is supported by substantial evidence. "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance."[7] The Court of Appeals cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision.[8] Here, the Commissioner found that Leggett was not disabled under Step IV of the test, which directs a finding that the claimant is not disabled if the claimant's impairments do not "prevent [the claimant] from doing past relevant work".[9] Contesting this finding, Leggett points to the testimony of the vocational expert, who stated that none of Leggett's past jobs fall within the category of sedentary jobs;

---

[5] 42 U.S.C.A. § 405(g) (West Supp.1995); *see also Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir.1994).

[6] *Fraga v. Bowen,* 810 F.2d 1296, 1302 (5th Cir.1987).

[7] *Anthony v. Sullivan,* 954 F.2d 289, 295 (5th Cir.1992); *see also Paul,* 29 F.3d at 210.

[8] *Fraga,* 810 F.2d at 1302; *see also Greenspan,* 38 F.3d at 236.

[9] 20 C.F.R. § 404.1520(e) (1995).

7

thus, Leggett argues that he cannot return to any of his past relevant work.

The mere inability of a claimant to perform certain "requirements of his past job does not mean that he is unable to perform "past relevant work' as that phrase is used in the regulations";[10]  rather, the Commissioner may also consider the description of the claimant's past work as such work is generally performed in the national economy.[11] The record contains sufficient evidence to support the Commissioner's finding that Leggett is

---

[10]*Jones v. Bowen,* 829 F.2d 524, 527 n. 2 (5th Cir.1987) (per curiam).

[11]*Villa v. Sullivan,* 895 F.2d 1019, 1022 (5th Cir.1990). Notably, this determination is distinguishable from the inquiry required when the Commissioner rules that the claimant is not disabled under Step V.  If the claimant proves his disability under the first four prongs of the test, then the burden switches to the Commissioner, who must establish that the claimant has "residual functional capacity", given the claimant's age, education, and past work experience, to perform other work available in the national economy.  20 C.F.R. § 404.1520(f);  *see Greenspan,* 38 F.3d at 236;  *Carrier v. Sullivan,* 944 F.2d 243, 246 (5th Cir.1991) (per curiam).  Step V also requires the Commissioner to use the medical-vocational guidelines in making the disability determination.  *See* 20 C.F.R. pt. 404, subpt. P, app. 2 (1995).

Step V does not apply to Leggett because it is only appropriate in situations when the Commissioner finds that although the claimant is not disabled, the claimant cannot return to any past relevant work.  For instance, in *Carrier,* the Secretary of Health and Human Services denied disability benefits to the claimant, holding that although the claimant's impairments prevented him from returning to his past job as a roofer, a position involving heavy labor, the claimant was still capable of performing other unrelated jobs in the national economy that are classified as "light work'.  *Carrier,* 944 F.2d at 246;  *see also Moore v. Sullivan,* 919 F.2d 901, 904 (5th Cir.1990) (per curiam).  In the instant case, however, Leggett is capable of being a cashier, even though he is limited in the type of cashier positions that he can take.

capable of performing his past relevant work as a cashier as that position is generally performed in the national economy.

In support of the ALJ's decision, we look to the combined testimony of the medical and vocational experts. After reviewing Leggett's history, the medical expert stated that he did not believe that Leggett "should be sitting in a chair doing nothing" and that he "can do normal physical activity," concluding that Leggett is capable of performing sedentary work. Leggett's medical history bolsters this conclusion. Leggett's doctors at no time restricted his physical activity; instead, they encouraged him to return to work. To a certain extent, Leggett even appears to have taken his doctors' advice. By his own testimony, Leggett was able to care for his three daughters, perform household chores, cut the grass in small increments, and even walk up to six blocks at a time.[12]

The vocational expert testified that Leggett could no longer carry out the specific duties of a convenience store cashier because that particular type of cashier must lift cartons to restock the shelves. The vocational expert added, however, that Leggett can perform the duties of a cashier as generally found in the national economy because such positions range from medium work to sedentary. Typical cashier positions, especially in a food service or restaurant setting, do not place physical demands on the

---

[12]It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status. *Reyes v. Sullivan,* 915 F.2d 151, 155 (5th Cir.1990) (per curiam).

cashier and are basically sedentary in nature. The vocational expert's testimony, then, provided the basis upon which the ALJ could rely to determine that an appropriate cashier position exists for Leggett.[13] A combination of the testimony of both experts and Leggett's medical records satisfy the substantial evidence requirement.[14]

Leggett contends, however, that the ALJ did not consider the claimant's ability to cope with stress as directed by Social Security Ruling (SSR) 85-15. The Court must take into consideration all of the claimant's impairments and consider their cumulative effect on the claimant's ability to perform a job.[15] Leggett's reliance on SSR 85-15 for this issue is misplaced. First, the application of SSR 85-15 is limited to those cases in which the Commissioner finds that the claimant is not disabled at Step V; Leggett was found disabled at Step IV. Second, this ruling applies only to situations in which the claimant suffers an

---

[13]Leggett also argues that the ALJ's decision is erroneous because the record does not contain evidence of job availability. This analysis, however, is not required when a claimant, like Leggett, is found not to be disabled at Step IV as opposed to Step V. *Compare* 20 C.F.R. § 404.1560(b) (1995) *with* 20 C.F.R. § 404.1560(c) (1995).

[14]The district court properly modified the specific finding of the ALJ on this point. The district court agreed with the ALJ that Leggett could be a cashier, but that there was only substantial evidence to support a finding that Leggett can be a cashier in a sedentary position, and not in a "light work" position as the ALJ held. 42 U.S.C.A. § 405(g) (West Supp.1995) ("The court shall have the power to enter ... a judgment affirming, modifying, or reversing the decision of the [Commissioner]".).

[15]*Scott v. Heckler,* 770 F.2d 482, 487 (5th Cir.1985).

alleged mental impairment that causes a severe adverse reaction to even the mildest demands of work. The record contains no evidence that Leggett suffers from such a condition, other than a few isolated references to his anxiety and depression about his condition. Attempting to advance his argument, Leggett points to the vocational expert's statement that a cashier position will not be totally free of stress and to the medical expert's references to "stress"; however, when considered in the context in which his statements were made, it is apparent that the medical expert was referring to Leggett's physical abilities on the job, and not to stress in a mental sense. The ALJ, then, properly considered all of Leggett's impairments that were put forth.

V.

Leggett next challenges the ALJ's interpretation of the medical evidence, arguing that the ALJ did not give the proper weight to the opinions of Leggett's treating physicians. Primarily, Leggett relies on Dr. Williams's April 6, 1992, conclusion that Leggett's condition was "chronic, refractory, and debilitating". While the opinions of a claimant's treating physicians are "entitled to great weight",[16] the ALJ can decrease reliance on treating physician testimony for good cause.[17] Good cause for abandoning the treating physician rule includes "disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical

---

[16]*Paul,* 29 F.3d at 211.

[17]*Id.; see also Greenspan,* 38 F.3d at 237.

11

laboratory diagnostic techniques, or otherwise unsupported by evidence".[18]

The April 6, 1992, statement is the only time that Leggett's treating physicians characterized Leggett's condition in such a manner. Until that point, Dr. Williams consistently found that Leggett's symptoms were more severe than objective medical evidence warranted. Furthermore, at no time did the treating physicians order Leggett to restrict his physical activity, nor does the record explain Dr. Williams's April 6, 1992, finding. When considered in conjunction with the earlier opinions of the treating physicians, the objective medical evidence, and Leggett's own testimony regarding his physical abilities, this Court finds that the ALJ had good cause to place little emphasis on that isolated, conclusory statement.

## VI.

Leggett also asserts that the ALJ's decision is erroneous because it fails to consider his alleged mental impairments and because the ALJ did not order psychological tests. The claimant has the burden of proving his disability and the ALJ has a duty to fully develop the facts, or else the decision is not supported by substantial evidence.[19] The ALJ's duty to investigate, though, does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on

---

[18]*Greenspan,* 38 F.3d at 237.

[19]*Pierre v. Sullivan,* 884 F.2d 799, 802 (5th Cir.1989) (per curiam).

the record.[20]  Because Leggett never raised the issue of mental impairment until this appeal, Leggett cannot say that he put his mental impairments before the ALJ.

Leggett also cannot rely on the record to prevail on this issue.  The record contains some references to Leggett's anxiety, stress, and depression, but these comments were isolated and Leggett was not treated for them.[21]  Leggett attempts to strengthen his position by relying on 20 C.F.R. § 404.1529(b) (1995), but this reliance is misplaced.  20 C.F.R. § 404.1529(b) states that the ALJ:

> will develop evidence regarding the possibility of a medically determinable mental impairment when we have information to suggest that such an impairment exists, and [the claimant] allege[s] ... symptoms but the medical signs and laboratory findings do not substantiate any physical impairment(s) capable of producing the pain or other symptoms.

As explained above and unlike *Latham v. Shalala* on which Leggett also relies, the ALJ did not have evidence sufficient to suggest that a mental impairment exists.  In *Latham,* the claimant was diagnosed as having mental problems and a somatoform disorder, which is characterized by physical symptoms that cannot be explained by objective medical evidence;  the ALJ erred by not considering whether the diagnosed disorders were responsible for his physical symptoms.[22]  No comparable evidence exists in Leggett's

---

[20]*Id.* at 802-03.

[21]*See Jones,* 829 F.2d at 526 (holding that the ALJ did not err by not ordering psychological tests when the claimant was merely "emotionally upset" about his condition).

[22]*Latham v. Shalala,* 36 F.3d 482, 484 (5th Cir.1994).

case.  Accordingly, the ALJ had no duty to develop the possibility of Leggett having a mental disability.[23]

## VII.

Finally, Leggett argues that the case should be remanded for the ALJ to consider new evidence of his mental impairments to determine whether the onset date of these impairments coincides with the onset date of the alleged impairments in this suit.  The Commissioner granted Leggett's new application for disability, which was filed after the commencement of these proceedings, on the basis of mental disability.  To reach this conclusion, the Commissioner relied on the evaluations of two psychiatrists to whom the Commissioner sent Leggett in late 1994.  Leggett now argues that this Court should remand his case to the ALJ to reconsider Leggett's disability status in light of this new evidence.

"[I]n order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding."[24]  In addition, the new evidence must also pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling.[25]  It is clear, then, that the recent origin of these psychiatric exams alone is not sufficient to

---

[23]*See Jones,* 829 F.2d at 526.

[24]*Bradley v. Bowen,* 809 F.2d 1054, 1058 (5th Cir.1987) (per curiam).

[25]*Id.*

14

warrant a remand.[26]   Furthermore, the fact that the psychiatric exams were not administered in the lower proceedings is also insufficient to create good cause;  rather, the absence of such tests only raises the issue of whether the ALJ initially should have ordered such an examination.[27]  As explained above, the ALJ was not required to investigate Leggett's mental disabilities.

While the evidence of Leggett's mental disability is new and material to his disability status, Leggett does not provide a satisfactory explanation for its absence from the initial proceedings.  The evidence consists of a new examination taken far outside of the period in which Leggett applied for or was denied benefits.[28]  Leggett offers no evidence that his current mental disability did not subsequently develop after his initial application or that it is not the result of the deterioration of a condition that was not previously disabling.[29]  Leggett, then, fails on his burden of providing good cause for the absence of this evidence.  We reject his request for a remand.  The appropriate action regarding these facts is the option that Leggett has already chosen:  to use this evidence as the basis for a new disability application.[30]

---

[26]*Pierre,* 884 F.2d at 803.

[27]*Id.*

[28]*Falco v. Shalala,* 27 F.3d 160, 164 (5th Cir.1994) (Wisdom, J.).

[29]*See Bradley,* 809 F.2d at 1058.

[30]*Falco,* 27 F.3d at 164 n. 20.

15

## VIII.

The judgment of the district court is AFFIRMED.