United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 4, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 03-30403

JEROME C. HAAS, III,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

Appeal from the United States District Court
For the Western District of Louisiana

(01-CV-1320)

Before REAVLEY, DAVIS, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Jerome C. Haas, III ("Haas") seeks reversal of the district court's decision to affirm the decision of the Administrative Law Judge ("ALJ") to deny Haas Supplemental Security Income ("SSI") and Social Security Disability benefits. The ALJ found that Haas was not disabled, that he could perform a range of sedentary work, and that there are a significant number of

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

those jobs in the national economy. Haas argues that the ALJ failed to give proper weight to the opinions of Haas's treating physicians and failed to provide a reasonable explanation for a conflict between testimony by the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT"). Because we find that the proper legal standards were used to evaluate the evidence and the ALJ's decision was supported by substantial evidence in the record, we AFFIRM the decision of the district court.

**BACKGROUND**

Haas applied for SSI on September 29, 1999, and Social Security Disability benefits on November 3, 1999. These applications were denied. In his applications, Haas alleged he became disabled on January 9, 1998; however, in his disability report, Haas asserted that he was first bothered by symptoms on that date but did not become unable to work until January 1999. Haas stated that he stopped working due to severe back pain and neck impairments and that he had undergone three back surgeries and suffered from degenerative disk disorder and osteoporosis. Haas's prior work experience was in the construction business: as an electrician helper, a safety technician, and a safety supervisor. Haas's medical history includes a March 1999 stair accident resulting in minimal spurs and calcification at disk L4; a July 1999 fall resulting in multiple rib fractures; and several back surgeries, the latest being an L5 laminectomy and L4-5 diskectomy

2

in August 1999.

In October 1999 Haas was examined by Dr. Frank Lopez, who determined Haas had a chronic pain condition and post-traumatic stress disorder. Dr. Lopez suggested long-term physical therapy and counselor services; he also indicated that with physical therapy Haas could obtain enough strength in his back and shoulders to return to gainful employment.

Haas underwent a consultive examination in December 1999 in connection with his claim for disability benefits. Dr. Anand Roy noted that Haas had a history of back surgery with limitation of flexion and extension of the back; difficulty walking and positive leg-raising; mild reduction of flexion of the neck; and mild grip loss, but essentially normal fine and dextrous movement of both hands. Dr. Roy suggested Haas refrain from lifting weight and working on uneven surfaces or at heights, due to his back problems.

Haas also underwent a consultive neuropsychiatric examination in February 2000 in connection with his disability benefits claim. Dr. Aretta Rathmell, a psychiatrist, noted that Haas sat back in her couch with his legs propped up and appeared to be totally comfortable. Dr. Rathmell's overall impression was that Haas had depression secondary to his medical problems and that he was anxious with a short attention span. She recommended that Haas receive therapy on an outpatient basis.

A residual functional capacity assessment provided by state Disability Determination Service medical consultants in February

3

2000 indicated that Haas was limited to light work activity. The associated psychiatric report noted Haas was depressed about his condition but was capable of simple, unskilled work.

In September 2000 Dr. Brian Willis, who had performed Hass's August 1999 back surgery, performed a radiological examination on Hass. Tests showed degenerative changes resulting in a narrowed segment of the cervical spine but no evidence of spinal cord compression. Dr. Willis also performed an electromyography ("EMG") that was suggestive of upper motor neuron disease, such as Lou Gehrig's disease, but not conclusive. Dr. Willis indicated he did not observe significant spinal cord or nerve root compression, nor did he see the need for additional surgery.

Haas requested that his case be adjudicated by an ALJ. A hearing was held on February 9, 2001, at which Haas was represented by an attorney. Haas was 42 at the time of the hearing, with a high school education and one year of college. At the hearing, Haas complained of headaches, shoulder problems, loss of strength and numbness in his upper and lower extremities, muscle spasms, and constant back pain. He also stated he felt depressed and anxious, and had trouble with his concentration. Haas testified that he watches TV, reads, and takes care of his children but has no social activities. A VE then testified that given the limitations as to Haas's age, education, past work experience, and determined residual functional capacity, which the ALJ had assessed to be

4

limited to sedentary work,[1] such a person could perform as a messenger or assembler at the sedentary level. The VE further testified that at the sedentary level, there were 7000 messenger positions in the United States, with 335 in Louisiana, and 104,000 assembler positions in the United States, with 600 in Louisiana. The VE also stated that at the light level of exertion, there were a larger number of both messenger and assembler jobs available. The VE did not list the DOT numbers or descriptions for these jobs.

The ALJ determined that Haas was not considered disabled to be eligible for SSI and Social Security Disability benefits. Although the ALJ found that Haas was not gainfully employed, Haas did have an impairment or combination of impairments considered "severe" under 20 C.F.R. §§ 404.1520(c) and 416.920(c),[2] and Haas could not perform his past relevant work, the ALJ also determined that Haas was not unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[1] The DOT defines "sedentary work" to mean:

Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

DOT, Appendix C.

[2] The ALJ referred to subpart (b) of 20 C.F.R. §§ 404.1520 and 416.920 in his decision, but the proper subpart is (c).

5

because he could perform a significant range of sedentary work, of which there was a significant number of jobs in the national economy. Haas did not rebut this finding.

Haas then filed this action challenging the ALJ's findings. The magistrate judge issued a report and recommendation that the ALJ's decision be affirmed and Haas's complaint be dismissed; Haas responded with objections. The district court adopted the magistrate's report and recommendations and dismissed Haas's complaint. Haas timely appealed.

## DISCUSSION

This Court's review of the Commissioner's final decision to deny benefits under the Social Security Act, per 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether the proper legal standards were used in evaluating the evidence and (2) whether the decision is supported by substantial evidence in the record. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (citation omitted).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A sequential five-step approach is used to determine whether a claimant qualifies as disabled. 20 C.F.R.

6

§§ 404.1520(a), 416.920(a). The claimant bears the burden of proving the first four steps to show that: (1) he is not presently engaged in substantial gainful activity; (2) he has a severe impairment; (3) the impairment is either listed or equivalent to an impairment listed in the appendix to the regulations; and (4) if the impairment is not equivalent to one listed in the regulations, the impairment still prevents him from performing past relevant work. *Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995) (citations omitted). Once the claimant proves the first four steps, the Commissioner has the burden of establishing that the claimant can perform substantial gainful employment available in the national economy. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). The burden then shifts back to the claimant to rebut this finding. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (citation omitted). A determination at any step that the claimant is or is not disabled ends the inquiry. *Leggett*, 67 F.3d at 564.

If the findings of the Commissioner are supported by substantial evidence in the record as a whole, the findings are conclusive and the decision must be affirmed. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*,

7

67 F.3d at 564 (citation omitted). Evidentiary conflicts are for the Commissioner, not the courts, to resolve. ***Brown***, 192 F.3d at 496 (citation omitted). Thus, this Court may not reweigh the evidence, but may only review the record to determine whether it contains substantial evidence in support of the Commissioner's decision. ***Leggett***, 67 F.3d at 564 (citation omitted).

## **Whether proper legal standards were used in evaluating the evidence.**

Haas does not dispute that the ALJ properly considered the inquiry to be whether Haas was under a disability within the meaning of the Social Security Act. The ALJ also undertook the proper five-step analysis; finding (1) Haas was not engaged in substantial gainful activity; (2) Haas had a severe impairment or combination of impairments based on the regulations; (3) however, Haas's impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart B, Regulations No. 4; but (4) Haas is unable to perform any of his past relevant work. Indeed, Haas had met his initial burden. At step five, however, the ALJ determined that Haas had the residual functional capacity to perform a "significant range of sedentary work" and that such jobs were available in significant numbers both nationally and in Louisiana. Because the Commissioner had met its burden, the ALJ ruled against a finding of disability.

The first point of error Haas puts forth on appeal is a legal one: that contrary to the requirements of SSR 96-5p, 1996 WL

8

374183 (S.S.A.), and **Newton**, the ALJ disregarded the opinions of Dr. Lopez and Dr. Willis. Social Security Ruling 96-5p states that whether a claimant is disabled under the Social Security Act is an issue reserved to the Commissioner; however, "our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including issues that are reserved to the Commissioner." 1996 WL 374183 (S.S.A.), at *2. In **Newton**, we held "absent reliable medical evidence from a treating or examining physician controverting the claimant's medical specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views." 209 F.3d at 453 (emphasis in original). Haas contends the ALJ instead relied upon the opinions of non-examining physicians, Dr. Roy and Dr. Rathmell, to determine he was capable of performing light or sedentary work. Haas also claims the ALJ did not address the fact that his treating physicians' opinions were consistent with those of the consultive examiners.

Here, Haas does not specify what opinions of Dr. Lopez and Dr. Willis the ALJ allegedly rejected; Haas merely cites to the doctors' letters detailing their examinations of him. Although Dr. Lopez stated that Haas had a chronic pain condition with back and neck problems and post-traumatic stress disorder, and suggested therapy and counseling, Dr. Lopez did not list any limitations in activity that conflicted with the ALJ's findings. In fact,

Dr. Lopez indicated that with physical therapy, Haas could fully mobilize his back and regain the strength to return to gainful employment. Haas himself considers Dr. Lopez's opinions to be consistent with those of the consultive examiners. Therefore, while the ALJ did not specifically mention Dr. Lopez's letter in his decision, given Haas has failed to identify any specific conflict and the absence of any obvious conflict, there is no error with regard to the weight the ALJ gave Dr. Lopez's opinions.

Haas makes the same argument with regard to Dr. Willis's opinions. Dr. Willis stated nothing definitive, only that he could not determine whether Haas was suffering from a degenerative condition of the cervical cord and that Haas's EMG was inconclusive as to upper motor neuron disease. The ALJ specifically considered and noted this uncertain finding by Dr. Willis, and when asked by the ALJ, Haas testified that he was still in the process of getting a second opinion. It is clear here that the ALJ did not reject or disregard Dr. Willis's opinions. It is also clear that both Dr. Lopez's and Dr. Willis's opinions were not incompatible with, but were consistent with, the consultative opinions of Drs. Roy and Rathmell. In fact, the ALJ found Haas's impairments to be *more* limiting than what the state examiners and physicians and Haas's own physicians found, at the sedentary level instead of the more strenuous light level. Thus, we also find no error with regard to the weight given to Dr. Willis's evidence by the ALJ. After

10

reviewing the legal analysis undertaken by the ALJ, we find that the proper legal standards were used to evaluate the evidence in Haas's case.

**Whether substantial evidence existed to support the ALJ's decision.**

When a claimant suffers from impairments that potentially preclude him from performing a significant number of light, unskilled jobs, such that application of the Medical-Vocational Guidelines is inappropriate, the Commissioner must rely on a VE or similar evidence to support a finding regarding the ability to perform a certain job. *See **Carey v. Apfel***, 230 F.3d 131, 145 (5th Cir. 2000). To support a determination of not disabled, the hypothetical questions posed to the VE by the ALJ must reasonably incorporate all disabilities of the claimant recognized by the ALJ, and the claimant must be afforded the opportunity to correct deficiencies in the ALJ's questions. ***Boyd v. Apfel***, 239 F.3d 698, 707-08 (5th Cir. 2001)(citing ***Bowling v. Shalala***, 36 F.3d 431, 436 (5th Cir. 1994)).

The second point of error Haas puts forth is an evidentiary one that concerns conflict between the VE's testimony as to the exertional level for a messenger and that provided for that job in the DOT, and the ALJ's failure to explain this conflict. Haas specifically points to DOT 239.677-010 (copy messenger) and 230.663-010 (outside deliverer), which are both characterized as

11

having an exertional level of light,[3] as opposed to sedentary. Haas asserts the ALJ's reliance on the VE's testimony is also misplaced because it did not support the ALJ's finding as to the number of available sedentary assembler jobs.  Also, no DOT numbers were given for the jobs cited.

This Court has held that where there is a conflict between the VE's testimony and the DOT, the ALJ may rely upon the VE's testimony, provided that the record reflects an adequate basis for doing so.  *Carey*, 230 F.3d at 146.  While we noted that a VE's erroneous classification of the exertional level or skills required to perform a particular job could call into question the probative value and reliability of such testimony, we also made it clear that:

---

[3] The DOT defines "light work" to mean:

Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects.  Physical demand requirements are in excess of those for Sedentary Work.  Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.  NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT, Appendix C.

12

[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*Id.* at 146-47. Social Security Ruling 00-4p provides that adjudicators should identify and obtain an explanation for any conflicts between the VE's evidence and the DOT, and explain in their decision how any identified conflicts were resolved. 2000 WL 1898704 (S.S.A.), at *2.

Here, the ALJ solicited the testimony of a VE. As is usual in such cases, the ALJ posed hypothetical questions to the VE, asking the expert to address Haas's residual functional capacity for work in light of his given set of limitations and impairments. Specifically, the ability to perform sedentary and light work with the additional limitations of the work being simple and repetitive and an assumption that the hypothetical claimant had mild to moderate pain and would have to change positions from time to time to relieve his symptoms. The VE identified 7000 messenger jobs nationwide at the sedentary level that would fit the hypothetical criteria, with 335 in Louisiana, and 104,000 assembler jobs nationwide at the sedentary level, with 600 in Louisiana. The VE stated that more of those positions were available at the light exertion level. The ALJ then added to the hypothetical question the assumption that the hypothetical claimant would have all the

13

specific physical and mental limitations the ALJ eventually found Haas to have. The VE responded that these assembler and messenger jobs could still be done.

Both messenger jobs cited by Haas from the DOT state that the physical demand requirements are in excess of sedentary work. DOT 239.677-010 (showing strength as light for copy messenger); DOT 230.663-010 (same for outside deliverer). However, SSR 00-4p clarifies that the DOT lists the *maximum* requirements for a position as it is generally performed, not the full range of requirements. 2000 WL 1898704 (S.S.A.), at *3; *see also* **Fenton v. Apfel**, 149 F.3d 907, 911 (8th Cir. 1998) ("[T]he DOT, in its job definition, represents approximate maximum requirements for each position rather than the range."). Clearly, "the categorical requirements listed in the DOT do not and cannot satisfactorily answer every [] situation." **Carey**, 230 F.3d at 146. Moreover, the DOT does provide for assembler jobs listing maximum physical demand requirements of sedentary exertion. *See, e.g.*, DOT 700-684-014. Therefore, the VE's identification of a lesser number of such positions being available at the sedentary level is not necessarily a conflict with the DOT.

As for Haas's contention that the VE's testimony does not support the ALJ's finding as to the number of sedentary assembler jobs, it fails because the ALJ based his findings on the precise figures outlined by the VE. Additionally, Haas cites no support

14

for his claim that the DOT numbers for positions identified by the VE must be given.

We do note that the VE did not provide an explanation or supporting authority for drawing a distinction between the exertional levels of the messenger and assembler positions, but we also note that Haas had an opportunity to but did not raise the issue of this alleged conflict at the hearing before the ALJ so the ALJ could recognize and explain any potential conflict. What we are left with is the VE's clear and unchallenged testimony that even considering all of Haas's additional personal limitations – including a sit/stand-at-will option; only occasional bending and twisting; limited squatting and kneeling; slightly limited fingering and gripping; the need to avoid uneven surfaces and unprotected heights; low noise; routine and repetitive instructions; and limited contact with the public and his coworkers – a significant number of messenger and assembler jobs were available at the sedentary level to provide Haas substantial gainful employment. Overall, we find that substantial evidence existed to support the ALJ's finding that Haas was not disabled for purposes of the Social Security Act.

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing, and for the reasons set forth above, we conclude that the ALJ used the proper legal standards to

15

evaluate the evidence and that substantial evidence existed to support finding for the Commissioner instead of Haas.  Therefore, we AFFIRM the decision of the district court below.

**AFFIRMED.**