# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 18, 2008

Charles R. Fulbruge III
Clerk

No. 08-50289
Summary Calendar

EDNA M. STREMPEL,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:06-CV-00474-LY

Before HIGGINBOTHAM, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

The Commissioner of Social Security ("Commissioner") denied Edna M. Strempel disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423, and Strempel challenged the denial in district court. The court affirmed the Commissioner's denial, a decision that Strempel appeals. We affirm.

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

## I. Facts and Proceedings

On March 12, 2004, Strempel applied for disability insurance benefits, alleging a disability onset date of November 26, 2001, due to migraine headaches, depression, diabetes, irritable bowel syndrome, and hypertension. Following the Commissioner's initial denial of Strempel's claims, an administrative law judge ("ALJ") held a hearing on September 13, 2005, at Strempel's request. Strempel appeared at the hearing and testified with the assistance of an attorney. Her husband, Gerald Ray Strempel, also testified. A vocational expert ("VE") was present and testified as an expert witness.

On December 16, 2005, the ALJ rendered a decision unfavorable to Strempel, finding that she was not disabled within the meaning of the Act and was not entitled to the requested benefits. The ALJ first found that Strempel had engaged in substantial gainful activity during the period from March through December 2003 and that she was therefore not disabled during that period. Next, the ALJ considered the remainder of the period since Strempel's asserted disability onset date. The ALJ determined that the migraine headaches, depression, diabetes, irritable bowel syndrome, and hypertension Strempel alleged were "severe" within the meaning of Social Security regulations, but that they were "not 'severe' enough to meet or medically equal," either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, 20 C.F.R. § 404.

In so determining, the ALJ found Strempel's allegation that she is completely unable to sustain competitive work to be "less than credible." Although he gave her the "benefit of the doubt as to her subjective complaints of pain and depressive symptoms" and took her obesity into account, the ALJ determined that Strempel retained the residual functional capacity ("RFC") to perform a significant range of "light work" as defined in 20 C.F.R. § 404.1567. Citing the Physical Residual Functional Capacity Assessment performed by Dr. James Wright, the state agency medical consultant, on April 23, 2004, the ALJ

found that Strempel "retained and retains the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, push and/or pull limited to the weights given above, with no other limitations noted." He further found that she "was and is able to understand, remember, and carry out detailed, but not complex[,] instructions, [and] respond appropriately to supervisors and coworkers in jobs that do not require independent decision making."

Finally, the ALJ found that Strempel had done past relevant work as a system programmer, a project director, and an administrative assistant. He relied on the VE's testimony to find that Strempel could return to work similar to that which she has performed in the past—as a cashier, for example, or as a counter or mail clerk. The VE testified, and the ALJ concluded, that those jobs exist in significant numbers in the national economy. Based on the VE's testimony, and considering Strempel's age, educational background, work experience, and RFC, the ALJ determined that Strempel was capable of making a successful transition to such work and found her "not disabled" within the meaning of 20 C.F.R. § 404.1520(g) and Medical-Vocational Rules 202.14 and 202.15, and not "under a disability" as defined in the Act.

After the Appeals Council denied Strempel's request for review, she filed her complaint with the district court seeking review of the final administrative decision pursuant to 42 U.S.C. § 405(g). A magistrate judge recommended that the decision be affirmed, and the district court adopted the recommendation on February 26, 2008. Strempel timely noticed this appeal.

## II. Standard of Review

Our review of the Commissioner's decision, like the district court's, is limited under 42 U.S.C. § 405(g) to two inquiries: (1) whether substantial evidence of record supports the decision; and (2) whether the decision comports with proper legal standards. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). If substantial evidence supports the Commissioner's decision, the

findings are conclusive and the decision must be affirmed. Richardson v. Perales, 402 U.S. 389, 401 (1971). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). As a result, this court "cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision." Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). A finding of no substantial evidence is warranted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340, 343–44 (5th Cir. 1988) (internal quotation marks and citation omitted).

## III. Burden of Proof

A claimant is "disabled" as defined in the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled.[1] The burden of proof is on the claimant at the first four steps. Leggett, 67 F.3d at 564. The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that a claimant can perform. Fraga v. Bowen, 810 F.2d 1296, 1301–02 (5th Cir. 1987). If the Commissioner identifies such employment, the burden shifts back to the claimant

---

[1] The steps include: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity. 20 C.F.R. §§ 404.1520(a), 416.920(a).

to prove that she could not perform the alternative work identified. Id. at 1302. Throughout the process, the ultimate burden of establishing disability remains with the claimant. Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983).

## IV.  Discussion

Strempel alleges three points of error in the district court's determination that substantial evidence supports the final administrative decision that she was not disabled within the meaning of the Act: first, that the Commissioner failed to give sufficient weight to the opinions of treating physicians; second, that the Commissioner failed to properly assess her credibility; and third, that the Commissioner did not properly assess Strempel's RFC.  We will address these contentions in turn.

### A.  Treating Physician Opinions

Strempel claims that the ALJ failed to give sufficient weight to the opinions of the treating physicians.  Strempel's brief contains lengthy, and highly duplicative, summaries of the opinions of her treating physicians. She summarily contends that the "ALJ disregarded this evidence without any explanation," and that "[t]here is no evidence to controvert the findings of the treating doctor."  This argument ignores the ALJ's detailed discussion of Strempel's treating physicians' evidence.

On the contrary, the ALJ considered and evaluated the medical evidence and symptoms from Strempel's medical examinations, including those of her treating physicians.  This included her subjective complaints of pain and fatigue, as well as her physicians' evaluations of her diabetes, depression, anxiety, nervousness, migraine headaches, irritable bowel syndrome, and other conditions.  As the ALJ noted, Dr. David Diaz, one of Strempel's treating physicians, had found that she lacks a mental condition that imposes more than minimal limitations.  He also noted that Strempel had told Dr. Diaz her migraines had been well-controlled and had become "infrequent" by 2004.  The record contains no evidence that Dr. Diaz believed Strempel's afflictions, either

singly or in combination, prevented her from working. In fact, he reached the opposite conclusion.

Strempel further complains that the ALJ gave inadequate consideration to the records of another physician, Dr. Simona Scumpia, who prepared a new patient evaluation of Strempel. According to Dr. Scumpia's report, Strempel complained of fatigue, anxiety, dry skin, constipation, nervousness, hot flashes, cold intolerance, muscle aches, a decreased libido, blurred vision particularly with elevated blood sugars, migraines, and weight gain of 24 pounds in the previous year. Dr. Scumpia also reported, however, that Strempel had denied weakness, fatigue, headaches, blurring, diplopia, visual field changes, shortness of breath, and decreased libido. Dr. Scumpia reported that she further denied high blood pressure, dysuria, polydipsia, frequency, nocturia, back and joint pain, muscle weakness, paresthesias, tingling, depression, anxiety, memory loss, crying, suicidal ideation, and hallucinations.

After examining these medical opinions, the ALJ gave "the claimant the benefit of the doubt as to her subjective complaints of pain and depressive symptoms," and found that Strempel suffered from "migraine headaches, depression, diabetes, irritable bowel syndrome, and hypertension." The ALJ considered these doctors' opinions and other medical and non-medical evidence (including her testimony that she mows the lawn using a riding lawnmower and helps babysit her infant grandchildren), and determined that her ability to perform "all or substantially all of the requirements of light work is impeded by additional exertional and/or non-exertional limitations." He nevertheless determined that she "was and is able to understand, remember, and carry out detailed, but not complex[,] instructions, [and] respond appropriately to supervisors and coworkers in jobs that do not require independent decision making."

In contesting that conclusion, Strempel contends that "[t]he ALJ did not include . . . the problems with functioning described by the treating doctors and

underlined above for emphasis" (pain, headaches, fatigue, numbness, foot swelling, cramps, nausea, temperature intolerances, generalized anxiety, urinary urgency and abdominal pain, side effects of her medication, leg pain with walking, nervousness, and drowsiness were underlined). In fact, however, the ALJ carefully considered her physicians' reports on these conditions, where they were addressed in those reports—as he noted, some "were not documented to the extent she alleges she experiences . . . or not documented at all"—and where they had the potential to affect her RFC. For example, although Strempel complains of muscle pain and depression, the former is not documented in the record to the extent that would be expected for someone claiming pain so severe it is disabling, and she never sought psychiatric care for the latter. Strempel has not pointed to any symptoms in the record affecting her RFC that the ALJ overlooked.

B. The ALJ's Determination of Claimant's Credibility

Strempel next contends that the ALJ wrongly discounted her credibility. The ALJ concluded that the record did not support Strempel's claims regarding the severity of her conditions. Specifically, he found her allegation that she is completely unable to sustain competitive work to be "less than credible." As the district court noted, the ALJ in this case determined based on the evidence in the record that her conditions did not preclude her from working. This determination was based on substantial evidence, and the ALJ applied the proper legal standard.

At bottom, Strempel's complaint is that the ALJ did not accept her characterization of her medical history. The ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). Here, the ALJ was entitled to discount Dr. Scumpia's notation of Strempel's complaints because they contradict Dr. Scumpia's other treatment notes and because the ALJ gave more credit to an earlier evaluation by Dr. Diaz, another treating physician. As we have often noted, it is the role of the Commissioner, and not the courts, to

resolve conflicts in the evidence. See, e.g., Brown, 192 F.3d at 496. This court "cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision." Leggett, 67 F.3d at 564. A finding of no substantial evidence is warranted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." Johnson, 864 F.2d at 343–44 (internal quotation marks and citation omitted). Here, the ALJ carefully considering Strempel's claims, and plainly exercised a credible choice based on substantial evidence.

C. RFC Determination

Strempel's argument that the ALJ erred in finding that she retains the RFC for a significant range of light work is similarly unavailing. First, as noted above, Dr. Wright concluded that Strempel "retained and retains the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, push and/or pull limited to the weights given above, with no other limitations noted." He further concluded that her "[a]lleged limitations caused by clmt's [claimant's] sxs [symptoms] are not wholly supported" by the evidence. Second, Dr. Diaz concluded in his Treating Physician Mental Functional Assessment of March 26, 2004, that she did not have a mental condition that imposed more than minimal limitations. That conclusion is consonant with his report of Strempel's March 7, 2003 visit, in which she denied anxiety and he found that her "[d]epression is doing well on the Celexa 30mg. Sleeping well. No depression. No tearfullness or irritability." Given that the ALJ was entitled to give greater weight to the evaluation of Dr. Wright and to the substantial and long-running records of Dr. Diaz than to pieces of Dr. Scumpia's evaluation that might support her case, substantial evidence supports the ALJ's RFC finding.

V. Conclusion

Finding that substantial evidence and relevant legal standards support the final administrative decision to deny Strempel's application for supplemental

security income benefits, we AFFIRM.